F. C. HORN

*v.*

LAWRENCE E. BOWEN, *et al.*

(No. 10377)

Submitted October 9, 1951. Decided December 4, 1951.

*Jackson, Kelly, Morrison & Moxley, W. T. O'Farrell, J. J. Jones,* for plaintiffs in error.

*Kay, Casto & Amos* and *Edward H. Tiley, Jr.,* for defendant in error.

Fox, President:

This is an action of debt instituted by F. C. Horn, in the Circuit Court of Kanawha County, West Virginia, against Lawrence E. Bowen and The Fidelity and Casualty Company of New York, a corporation, for breach of contract, and it is assumed the action of debt is used on account of the execution of a performance bond on the part of the corporate defendant. A trial of the case resulted in a verdict in favor of the plaintiff against the defendants in the sum of $2,752.91, to which judgment we granted this writ of error and supersedeas.

In May, 1944, the plaintiff in this action, F. C. Horn, entered into a contract with the County Court of Kanawha County to clear timber, brush and wooded growth from what is known as the airport site in Elk District, Kanawha County, West Virginia, covering an area estimated at 260 acres, but which, in fact, upon survey was found to contain 259.2 acres. The said work was to be performed by Horn at the price of $69.40 per acre, and he was later compensated at that figure by the county court, and paid the sum of $17,988.48. Later, on May 13, 1944, Horn sublet said work to the defendant, Lawrence E. Bowen, and a writing was entered into by which Bowen agreed to perform said work at the price of $58.00 per acre. Bowen was required to give a bond for the performance of his contract, and did so with the defendant, The Fidelity and Casualty Company of New York as his

surety. A short time thereafter, by mutual agreement between Horn and Bowen, Horn released Bowen from removing the timber on a tract of land estimated to be 20 acres, but which on survey was found to be 32.68 acres, leaving a tract of 227.32 acres from which it was still the obligation of Bowen, under his contract, to cut and remove the timber. From that time on, Bowen had no connection with the 32.68 acres, and that tract is not now involved in this litigation.

Bowen began work under his contract immediately after its execution, and pursued the same diligently until sometime in August, 1944, when it appears that, by mutual agreement, there was a suspension in the work for some six or seven weeks. Thereafter the work did not progress satisfactorily. It appears, generally speaking, that Bowen performed work over the entire 227.32 acres, but left much timber and debris remaining on the land, and did not entirely complete the work he had undertaken to perform. There was much dissatisfaction and complaint by the county court about this condition, and the matter reached the point where the said court took steps to cancel Horn's contract. Horn then went to the defendant insurance company, Bowen's surety on his performance bond, and an arrangement was worked out between them whereby Horn was to complete the work on the 227.32 acres which Bowen had failed to perform. Horn completed this work at a claimed cost to him of $3,122.12, which, according to his account filed, represented $1,605.38 for labor, to which was added 20% of that amount for supervision, social security, etc., the two amounts aggregating the sum of $1,926.44; hiring of a bulldozer, $175.00; amount paid Harrison Construction Company, $677.60, for removing timber at a certain point; an item of $43.54 paid the Pure Oil Company; $34.30 paid Pierson Fielding Hardware Company; $60.00 for engineering; an item of $10.87 for repairing a tire; $75.72 to Appalachian Electric Power Company; $118.65 for attorney's fees and costs, in connection with the litigation growing out of the matter; the aggregate of all of which is $3,122.12. On the trial of the case the item of $118.65

attorney's fees was withdrawn, so that the net cost of the completion of Bowen's work, as claimed by Horn, was $3,003.47.

The amount which would have been due Bowen had he completed his work, covering the entire 227.32 acres, at $58.00 per acre, was $13,184.56, of which Bowen, at the date of the trial, had been paid the sum of $12,934.00, leaving a balance due him of $250.56. The jury evidently gave Bowen credit for that amount and deducting it from the sum of $3,003.47 rendered a verdict in favor of the plaintiff for $2,752.91. We do not deem it necessary to discuss the various items which went into this account. The jury made its finding based upon the account, as roughly stated above, and plaintiffs in error do not seriously controvert any item of the account which the jury allowed. Their position, based on other grounds, is that the verdict is grossly excessive. They do not question here that the contract was breached by Bowen, and that out of that breach some liability accrued to plaintiff against Bowen and his surety.

In the first place, counsel for the plaintiffs in error made an effort to inject into the case the contract between the County Court of Kanawha County and Horn. We have referred to this contract because it is necessary to do so in discussing some of the points raised in the case, but the trial court refused to allow that contract to be considered by the jury. That contract was vouched in the record and we have access to it. Considering that contract, we think it had nothing whatever to do with the litigation between Horn and Bowen, and his surety. It was of no consequence to Bowen as to what profit, if any, Horn might have made out of his contract with the county court. The contract we are here called upon to consider is the contract between Horn and Bowen, dated May 13, 1944. This contract, if carried out by both parties according to its terms, would have resulted in a profit to Horn, as to the entire 259.2 acres, of $2,954.88, reached by multiplying the difference between the contract price which the county court agreed to pay Horn, and the price

at which Bowen agreed to perform the work. On the basis of the 227.32 acres, Horn's profit would have been $2,591.44. So far as the question of profit is involved, we think the profit which we should deal with, as between Horn and Bowen, was the figure $2,591.44, because under the agreement between the parties the 32.68 acres were withdrawn from the contract, and as modified, the contract was really one to perform work on the 227.32 acres.

Counsel for plaintiffs in error rely strongly on the rule laid down by this Court in the case of *Hurxthal* v. *Boom Co.*, 53 W. Va. 87, 44 S. E. 520, in which this Court held:

> "In an action for breach of contract the damages recovered must be such as will give, and only such as will give, compensation for the actual loss directly flowing from the breach of the contract."

In the body of the opinion in that case it was stated:

> "* * * Damages must not go beyond fair compensation for actual loss sustained. They cannot be punitive in action on contracts. * * *, compensation for actual loss is the test, the standard of damages in actions on contract. * * * Damages for breach of contract in excess of actual compensation are unwarranted and a ground for a new trial. * * *"

This statement is amply supported by other cases, and by text, including *Hall* v. *Philadelphia Co.*, 74 W. Va. 172, 81 S. E. 727; 15 Am. Jur. 442-444; 17 C. J. 847-849; 25 C. J. S. 563-566; *Orebaugh* v. *Antonious*, 190 Va. 829, 58 S. E. 2d. 873; *McDaniel* v. *Daves*, 139 Va. 178, 123 S. E. 663. Other cases are to the effect that damages in contract cases cannot be punitive, and the general effect is to hold that they can be compensatory only, and that the plaintiff is not entitled to damages beyond his actual loss.

We do not question the soundness of this position, and we think it should be applied to this case. Our difficulty with the position taken by counsel for plaintiffs in error is that in applying this principle they ignore certain facts which are clearly shown by the evidence. Their princi-

pal ground of complaint is that if the judgment appealed from is permitted to stand, it will result in the plaintiff, Horn, reaping a profit out of his contract with Bowen of $4,921.95, whereas they say that the greatest profit Horn could have conceivably gained was $3,054.88. As we see the case, that profit could not have exceeded $2,954.88, and we do not think it could have exceeded $2,591.44, as stated above, for, in its final form, the contract only covered 227.32 acres. They argue that if the judgment is allowed to stand, Horn's profit will be $1,866.07 more than that profit would have been had Bowen completed his contract.

We think counsel for the plaintiffs in error, in discussing the question of profits, have ignored a very vital element of the case, and that is the cost to Horn of clearing the timber from the 32.68 acres of land which was released to him from the original contract of May 13, 1944. The amount of money which Horn received from the county court, under his contract with it, was $17,988.48, and it must be borne in mind that that figure was reached by calculating the 259.2 acres at $69.40 per acre. Bowen was paid or there was due from Horn for clearing the 227.32 acres the sum of $13,184.56; the cost to Horn in completing the work undertaken by Bowen on the 227.32 acres, after the item for attorney's fees was deducted from his account, was $3,003.47; the cost to Horn of clearing the 32.68 acres released from the contract, calculated at $58.00 per acre, was $1,895.44. These items aggregate the sum of $18,083.47, or $94.99 in excess of the sum paid to Horn by the county court. The judgment which Horn recovered was $2,752.91, from which, if the $94.99 loss is deducted, leaves Horn with a profit of $2,657.92, which is $66.48 in excess of what his profit would actually have been on the 227.32 acres, had Bowen not breached his contract. Of course, other elements in the case, errors in acreage and other matters, easily account for that figure. We cannot say, as a practical question, that the judgment returned in favor of the plaintiff gives him a greater profit than that which he would have received had all contracts been carried out as written.

The brief filed by the plaintiffs in error clearly shows that on the question of the profit to which Horn might have been entitled, there was an absolute failure to take into account the item of $1,895.44 which it is assumed it cost Horn to clear the 32.68 acres aforesaid. We have only to quote the part of that brief which states:

"But as things now are, plaintiff Horn received the $17,988.84 from the County Court. Plaintiff Horn paid Bowen $12,934.00. Plaintiff Horn paid out a net of $2,871.56 to complete the contract, making a total cost of the entire contract to Horn of $15,805.56. Subtracting this latter figure, from the amount of $17,988.48 paid to Horn by the County Court, Horn made a profit of $2,169.04 before he ever brought this suit. If we add to this profit of $2,169.04 the amount of the verdict in this suit, that is, $2,752.91, we get a total of $4,921.95. This means that the verdict and judgment in this suit will put the plaintiff in a position where, instead of making $3,054.88 as he would have made if the contract had been carried out, plaintiff will now make a profit of $4,921.95."

As a general rule, Horn's damages should have been limited to the profit he would have made on the contract for the 227.32 acres, provided Bowen had carried out his agreement to the letter, although we do not understand the law to be that there can be no departure from that rule in special cases. On the facts presented in this case, we see no reason to disturb the jury verdict, and the judgment of the court, because of a slight difference between the verdict and the profit Horn would have made had Bowen carried out his contract.

We, therefore, affirm the judgment of the Circuit Court of Kanawha County.

*Affirmed.*