Mary Elizabeth SHORT and Lafayette Short, Plaintiffs,

v.

GRANGE MUTUAL CASUALTY COMPANY, a corporation, Defendant.

Civ. A. No. 1154.

United States District Court
S. D. West Virginia,
Bluefield Division.

Dec. 16, 1969.

Ballard & Shinaberry, Welch, W. Va., for plaintiffs.

J. Strother Crockett, Crockett, Tutwiler & Crockett, Welch, W. Va., for defendant.

CHRISTIE, District Judge.

This civil action, commenced by the plaintiffs in the Circuit Court of McDowell County, West Virginia, was removed to this court upon the petition of the defendant because of diversity of citizenship and requisite jurisdictional amount in controversy. Following the removal, defendant filed an answer to the complaint wherein it asserted a general denial and an affirmative defense. The defendant grounds its affirmative defense (failure to utilize the arbitration procedure provided for in its policy contract) on the law of the state of Ohio, which it alleges is controlling and determinative of the issue now before the Court. Upon inspection of the record before us, if Ohio law is controlling the case should be dismissed as being premature because the arbitration process has not been resorted to. However, plaintiffs deny that Ohio law is controlling and insist that the issue should be determined by West Virginia law, which would allow maintenance of the suit. In addition, plaintiffs further assert as alternative grounds that (1) the arbitration allowable under the Ohio law has been waived by the defendant, and (2) the infancy of the plaintiff Mary Elizabeth Short forbids the enforcement, under either state law, of mandatory arbitration as to her, a third-party beneficiary of the liability insurance contract.

The matter is presently before this Court for decision upon the cross motions of the parties for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, each asserting that no genuine issue of any material fact is involved and that the only issues

presented are ones of law. The facts deemed material by the parties have been stipulated, from which it appears that the defendant insurance company issued a policy to one Gary W. Keene on October 28, 1967. The policy was issued in Ohio and Keene was the named insured as the owner of a 1964 Mercury Comet automobile that was licensed in Ohio. It contains the following arbitration provision:

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this part, then, *upon written demand of either*, the matter or matters upon which such person and the company do not agree shall be settled by arbitration * * * ." (Emphasis supplied).

On November 3, 1967, the insured automobile was being operated in McDowell County, West Virginia, by Mary Elizabeth Short. She was driving the car with the knowledge and consent of Keene. Miss Short became involved in an accident on this date with another automobile which was owned by N. J. Payne and driven by Frank Kennedy. The accident occurred near the town of Iaeger, McDowell County, West Virginia. The automobile owned by Payne and driven by Kennedy was not covered by any public liability insurance. The defendant's policy issued to Keene provides for protection against uninsured motorists and the defendant admits Miss Short was covered under the provisions of the policy. Defendant referred Miss Short's claim to an independent adjuster who contacted her counsel prior to the institution of any law suit. After failing to agree on a settlement, Mary Elizabeth Short and Lafayette Short instituted suit in the Circuit Court of McDowell County, West Virginia, on December 18, 1968, for damages allegedly arising from the accident of November

3, 1967. The suit named Frank Kennedy and N. J. Payne as defendants. Copies of the summons and complaint were served on the insurance company in compliance with the provisions of the West Virginia Uninsured Motorists Statute, W.Va.Code, Ch. 33, Art. 6, Sec. 31(b). Neither Kennedy nor Payne filed an answer, nor did the insurance company answer in their behalf. A default judgment was duly taken on liability and the issue of damages was submitted to the court. On April 1, 1969, the Circuit Court of McDowell County rendered a judgment in favor of Miss Short against Kennedy and Payne in the amount of $10,000.00, plus the costs and interest from March 31, 1969, and a judgment for Lafayette Short against the defendants for $536.32, plus costs and interest from March 31, 1969.

After obtaining these judgments, plaintiffs' counsel contacted the insurance company and demanded payment. The company refused. The plaintiffs then brought the instant suit, not alone to enforce payment of these state court judgments, but also to recover punitive damages for what they characterize as the defendant's "deliberate, wilful and intentional refusal to pay said judgments."

### I

It is to be borne in mind that "jurisdiction" of the West Virginia Court is not now, nor has it ever been, an issue. The conflicts of law question is limited to choosing and applying the proper state law. Therefore, we perceive our immediate task to be the resolution of this "choice of law" issue.

In the famous case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), appears the following equally famous language:

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a deci-

sion is not a matter of federal concern. There is no federal general common law."

Following *Erie*, the United States Supreme Court in Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940), held that in a diversity case, a federal court sitting in a particular forum must apply the conflict of laws rules that prevail in the forum's state courts. As the *Klaxon* Court was careful to point out, the proper function of the federal court is to ascertain what the forum state law is, not what it ought to be.

In the area of conflicts of law there has long been a recognized dichotomy of "procedure and substance." It is also the recognized general rule that as to matters of "procedure" or "remedy" the *lex fori* (the law of the forum) governs. We are here concerned with an arbitration clause in a valid contract. In searching for a classification for it we can find no better authority than the United States Supreme Court, which found, in Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1955) that arbitration was specifically a matter of procedure or remedy. Under the direction of *Klaxon*, supra, we must look to the West Virginia conflicts of law rule and by so doing, we discover that, as to matters of procedure, West Virginia has consistently held it to be governed by the principle of *lex fori*. 4 M. J. Conflicts of Laws, Section 37. In Forney v. Morrison, 144 W.Va. 722, 110 S.E.2d 840, 842–843 (1959), the West Virginia Court states:

"That the general rule is to the effect that the substantive rights of the parties to an action are governed by the *lex loci* and that the *lex fori* controls as to matters pertaining to remedial rights of the parties is almost universally the rule applied where the question of conflict of laws arises in the trial of a case seems well settled."

We are also aware of the well-reasoned and forceful pronouncement of Mr. Justice Frankfurter, in Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), viz.:

"In essence, the intent of that decision (*Erie*) was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."

In view of the United States Supreme Court decisions and the West Virginia conflicts of law rule, we have little trouble in concluding that West Virginia law must be applied.

## II

The law of West Virginia renders unenforceable a provision in an insurance policy requiring compulsory arbitration of claims. W.Va.Code, Ch. 33, Art. 6, Sec. 31, subsection (g) provides,

"No such endorsement or provisions shall contain any provision requiring arbitration of any claim arising under any such endorsement or provisions, nor may anything be required of the insured except the establishment of legal liability, nor shall the insured be restricted or prevented in any manner from employing legal counsel or instituting legal proceedings."

Thus, we conclude that the defendant could not require arbitration under West Virginia law as a condition precedent to the institution of the action.

Moreover, we are of the opinion that under the facts stipulated the defendant has waived its right to arbitration by its action, or more appropriately, its inaction. The Fourth Circuit has adopted the rule that the party seeking to enforce arbitration can do so only when not guilty of dilatoriness or delay. Radiator Specialty Co. v. Cannon Mills, Inc. 97 F.2d 318, 117 A.L.R. 299 (4th Cir. 1938). In instances where federal courts have found a waiver the party

seeking the arbitration generally first brought up the subject only after long delay or when the trial was near at hand. American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115 (6th Cir.1948), cert. den., 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074 (1949); Radiator Specialty Co. v. Cannon Mills, Inc., supra; La Nacional Platanera, S. C.L. v. North American Fruit & Steamship Corp., 84 F.2d 881 (5th Cir.1936). The West Virginia Supreme Court of Appeals has held that in a situation where a contract by its terms makes arbitration a condition precedent to the maintenance of an action, the ignoring of the arbitration provision by the plaintiff still leaves an affirmative duty on the defendant to timely demand arbitration and his neglect or refusal to do so amounts to a waiver of the right. Earl T. Browder, Inc. v. County Court of Webster County, 143 W. Va. 406, 102 S. E.2d 425 (1958).

By the agreed statement of facts it appears that the defendant knew of the plaintiffs' claims sometime in 1967. The defendant was advised of all proceedings in the matter and chose to do nothing. Defendant at no time in the past, and in fact has not yet, made a written demand for arbitration as contemplated by the contract. In all candor, we must conclude, under the circumstances, that even if the defendant initially had the right to invoke arbitration it, by its conduct, has since waived such right.

Plaintiffs' argument that the arbitration provision in no event can be enforced against Miss Short by reason of her infancy at the time the cause of action arose is also well taken. The arbitration provision is separable from the general contract and does not affect the substance of the mutual obligation. This rule is in conformity with the holding of the *Bernhardt* case, supra, and is correctly stated in 5 Am.Jur.2d, Arbitration and Awards, Section 18, as follows:

"Generally, it is not a part of the substance of the general contract, per-

tains to the remedy only, is collateral to the contractual matters, and is, therefore, separable from the main body of the contract."

If this rule were not so, and the arbitration provision was considered substantive, then such provisions would divest the court of jurisdiction to approve the settlement of an infant's claim. But to call arbitration substantive is directly contra to *Bernhardt* and we are guided by that decision.

## III

■■ The only remaining issue for consideration is that concerning the claim for punitive damages. As we have seen, the predicate for it is defendant's bad faith in not paying the state court judgments. The defendant by its answer denies this and affirmatively asserts the contrary. We find no language in the stipulation of agreed facts putting this dispute at rest. To answer this factual question would normally depend upon an evidentiary inquiry into the facts and circumstances that motivated the defendant in refusing payment. Obviously summary judgment would be inappropriate absent such inquiry.

However, such relief may nevertheless be granted for another reason. The claim is not maintainable as a matter of law because it does not have for its genesis tortious conduct. The Uninsured Motorists Provision of the policy of insurance issued by the defendant to Gary W. Keene provides, in pertinent part, that

"Any person * * * who has secured * * * judgment shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by the policy."

This provision, applying to and being for the benefit of the plaintiffs, placed upon the defendant a contractual duty to pay the judgments in question, but its failure to do so, however motivated, does not give rise to a claim for punitive damages, for such damages, under West

Virginia law, are obtainable only for wanton or wilful conduct of a tortious nature and which violates a duty imposed by law. Hurxthal v. St. Lawrence Boom & Lumber Co., 53 W.Va. 87, 44 S.E. 520, cited with approval in Horn v. Bowen, 136 W.Va. 465, 67 S.E.2d 737 (1951). Indeed, this appears to be the general rule elsewhere. See 25 C.J.S. Damages § 120, p. 1126; 22 Am.Jur.2d (Damages) Sec. 245, p. 337. The most recent case cited in the latter work in its 1969 Supplement is that of White v. Benkowski, 37 Wis.2d 285, 155 N.W.2d 74, wherein the following annotation is given:

> "Punitive damages, without exception, are not recoverable in breach of contract actions, and this is true even if the breach is wilful."

For the reasons thus appearing, the plaintiffs will have summary judgment against the defendant for the amount of their state judgments, with interest and costs, but will be denied such relief on their claim for punitive damages.