Peter L. BATTISTA, Jr.,
Plaintiff-Appellee,

v.

LEBANON TROTTING ASSOCIATION,
Defendant,

and

John J. Carlo, Defendant-Appellant.

Peter L. BATTISTA, Jr.,
Plaintiff-Appellant,

v.

LEBANON TROTTING ASSOCIATION,
Defendant-Appellee,

and

John J. Carlo, Defendant.

Nos. 75–2129, 75–2130.

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1976.

Decided June 29, 1976.

---

Arnold Morelli, Bauer, Morelli & Heyd, Cincinnati, Ohio, for appellant in No. 75–2129.

Harry M. Hoffheimer, Wood, Lamping, Slutz & Reckman, Cincinnati, Ohio, for Peter L. Battista, Jr.

Louis F. Gilligan, Keating, Muething & Klekamp, Richard L. Creighton, Jr., Cincinnati, Ohio, for appellee in No. 75–2130.

Before WEICK, LIVELY and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

In this diversity case, governed by Ohio law, the principal question of law for us to decide is whether a partner can be held individually liable for the alleged tortious breach of a partnership contract when the partnership itself was held not liable for the breach of such contract.

The partnership, Lebanon Trotting Association (Lebanon), had entered into a written contract with Peter L. Battista, Jr. (Battista) in 1967, whereby it granted to Battista the concession to compile, produce, and sell programs for the racing events held at the harness horse racing meets conducted by Lebanon at the Warren County, Ohio Fairgrounds. The agreement was signed in behalf of the partnership by Corwin Nixon, its operational manager. The contract was to run for a period of three years, with programs "to be as per 1966 format." Prior to the written contract Battista had operated the concession under an oral agreement from 1960 to 1966. Under the contract he sold the programs for thirty-five cents each, and paid Lebanon ten cents for each program sold. The price was printed on the face of the program.

Battista conducted his business under the name of National Racing Publications; he also produced programs for two other race tracks.

Lebanon operated under a written partnership agreement executed in 1951, which agreement purported to form a limited partnership with John J. Carlo (Carlo) as the sole general partner. The District Court held, however, that it was a general partnership because it had failed to file until 1969 a Certificate of Limited Partnership with the Clerk of the Common Pleas Court of the County in which its principal office and place of business was located, as required by Ohio Rev.Code §§ 1781.02(A)(2) and 1781.27(B). Thus, at the time when plaintiff's claim arose Lebanon was a general partnership.

In late 1967 relations between Carlo on one side and Battista and his father on the other, became strained; Battista's father apparently had accused Carlo of mishandling partnership assets, and Battista had sued Carlo over a transaction involving the interest of a deceased partner in another partnership. On December 29, 1967 Lebanon addressed a letter to Battista which read:

Take Notice, that effective for the year of 1968 and thereafter, you or your concern will not produce the programs for the Lebanon Trotting Association, irrespective of any contract signed by any person, other than the undersigned.

Very truly yours,
Lebanon Trotting Association
By /s/ John J. Carlo
John J. Carlo
General Partner

Battista's office was located at the Fairgrounds, so Battista saw Nixon often. Nixon assured Battista that he would be producing the programs in spite of the letter. However, Battista recognized the legal effect of the letter, and he told Nixon that a retraction from Carlo was necessary before Battista could begin preparation for the April races. After being assured several times by Nixon that a retraction was "in the mail," but not having received one, Battista informed Nixon on March 19, 1968 that if a letter of retraction was not received by March 20th Battista would not be able to perform. On March 22d Battista cleaned out his office, informed his staff that their services were no longer required, and notified Lebanon that he would not produce the programs. He also told his printer that he would not be printing programs for Lebanon. The next day, March 23d, he instructed his attorney to file suit against Lebanon.

Meanwhile, Carlo, when informed by Nixon of Battista's attitude, mailed an air mail special delivery letter of retraction, dated March 20, 1968, from Northville, Michigan, to Battista in Lebanon, Ohio, which letter offered Battista the opportunity to produce programs for the 1968 season on the same terms as those for the 1967 season; no mention was made of the 1969 season. The letter also purported to require acceptance of the offer by March 27, 1968. This letter did not reach Battista's home until Sunday, March 24th, when Battista was out of town. He first read the letter on March 25th, the day his attorney filed suit against Lebanon.[1]

1. The suit, a state court action, was dismissed when the instant suit was filed in the Federal Court on October 12, 1968. The Federal Court suit was not reached for trial until January 27, 1975.

The present action was commenced by the filing of a four-count complaint. The last two counts were dismissed at trial for lack of proof, and are not in issue here. The first count sought compensatory damages in the amount of $58,000 against Lebanon for breach of contract. The second count sought compensatory and punitive damages from Carlo in the amount of $358,000 for tortiously inducing the partnership to breach its contract with Battista.

The case was tried before a jury. At the trial the District Court gave the jury three verdict forms and instructed the jurors to use just one of the forms to return their verdict. The first form was a finding in favor of both defendants; the second form was a finding against Carlo only, with spaces for entry of compensatory damages, punitive damages, and attorney's fees; the third form was a finding against Lebanon only, with a space for entry of compensatory damages. Battista's objections to those forms were met with the District Court's insistence that it would not permit a recovery against both Carlo and Lebanon.

The jury returned a verdict, using the second verdict form and awarding $38,000 compensatory damages, no punitive damages, and $10,000 for attorney's fees, all against Carlo.[2] The District Court entered judgment on the verdict against Carlo alone, in the amount of $48,000, and costs.

Both Carlo and Battista appealed. The appeals were consolidated for oral argument. Carlo contends that the District Court committed a number of errors during the trial; however, the most significant issue in this appeal is raised by Carlo's contention that he cannot be held individually liable for inducing a breach of a contract by a partnership in which he was a partner. Battista raises the corollary issue in his claim that the District Court erred in refusing to submit to the jury verdict forms whereby the jury could make findings for or against Lebanon for breach of contract, as well as against Carlo for causing the same breach.

The District Court instructed the jury that the contract had been repudiated, but that if it found that the repudiation had been effectively retracted it should find in favor of both defendants and should return the first form of verdict; however, if it found that no retraction had occurred it must determine whether the repudiation had been malicious; and if it found the repudiation had been motivated solely by malice the jury was to return the second form of verdict against Carlo only;[3] if the repudiation was not motivated solely by malice the jury was to return the third verdict form against Lebanon only.

Thus the District Court held that a partner who maliciously repudiates a contract on behalf of his own partnership is individually liable in tort for doing so, but that the partnership is not liable. Carlo contends that in such a situation only the partnership is liable, since Carlo was acting in the partnership name and in its behalf, and that he would be liable personally only in his status as a partner. Battista contends that the partnership is liable for breach of the contract and that the partner is liable additionally in tort for maliciously causing the breach. On this basis Carlo could be held liable with the other partners for compensatory damages and for additional compensatory damages and punitive damages for his tortious conduct.

■ As before stated, the original partnership agreement of. Lebanon executed in 1951 named Carlo as the sole general partner. Regardless of whether Lebanon was a

---

**2.** A photocopy of the verdict is appended hereto as Exhibit "A" (A. 183).

**3.** Assuming that the jury followed the Court's instructions, it must have found that the repudiation of the contract by Lebanon was not effectively retracted and that Carlo, in repudiating the contract in behalf of the partnership, had acted maliciously. It would have been better practice for the Court to have had formal written findings of the jury on these issues and to have verdicts with respect to each defendant.

general or a limited partnership in 1967, it is clear that the partners gave Carlo authority to make, and therefore authority to repudiate or breach, contracts on behalf of the partnership. We find no authority for the proposition that the motive of a partner in repudiating a partnership contract can alter the binding effect of his act in behalf of the partnership if the partner has actual or apparent authority to repudiate or breach the contract.

■ When Carlo repudiated the contract on behalf of Lebanon he bound the partnership, and the partnership became liable for any resulting compensatory damages caused by the repudiation. The jury's verdict indicated that it found that the repudiation was malicious and was not retracted. Such findings would require a verdict against Lebanon, since the motive of the partner could not alter his legal power and authority to bind the partnership.[4]

We therefore hold that the District Court erred in refusing to submit to the jury the case against Lebanon for a breach of contract caused by the repudiation of the contract by Carlo.

■ The corollary problem here is whether Carlo can also be held liable individually to Battista for causing the repudiation. Count II of the complaint attempts to state a claim for tortiously inducing a breach of contract. Battista is apparently attempting to state a claim based upon the tort of interference, which is recognized in Ohio. Such a claim arises when one party to a contract is induced to breach the contract by the malicious acts of a third person who is not a party to the contract. The other party to the contract can then sue the third person who induced the breach. *Reichman v. Drake,* 89 Ohio App. 222, 100 N.E.2d 533 (1951); *Leibovitz v. Central Nat'l Bank,* 75 Ohio App. 25, 60 N.E.2d 727 (1945).

■ If we consider a partnership to be an entity separate from any partner, an action for interference would lie; however, if we apply the theory that a partnership is an aggregation of parties each of whom is the mutual agent of the others, we can not consider Carlo to be a separate or third party in this ligation. The general rule of law in interference actions is that one contracting party cannot sue the other party for interference, that is, a party to a contract cannot be liable in tort for inducing his own breach.[5] Carlo would be a party to this contract and liable in contract for the breach by virtue of being a partner of Lebanon; his liability would be joint with the other partners under Ohio Rev.Code § 1775.14(B).

■ The District Court, in denying a motion to dismiss Count II for failure to state a claim, held that this case is analogous to the situation in *Pennington Trap Rock Co. v. Pennington Quarry Co.,* 22 N.J.Misc. 318, 38 A.2d 869 (1944), in which the controlling shareholder of a corporation was held liable for inducing a breach of a contract to which the corporation was a party. That case is inapposite to the facts presented here. A corporation is generally recognized as a separate legal entity from its shareholders, officers and directors, but a partnership is not so considered. *Pennington* did not involve a partnership and is thus inapplicable to this case.

■ A partner who commits a tort while acting within the scope of his authority can

---

**4.** Ohio Rev.Code § 1775.08(A) reads as follows:

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

The Ohio law on malicious acts of agency is restated in 2 O.Jur.2d *Agency* § 161, as follows:

. . . Ohio courts in accord with modern authorities, hold that if the act is within the scope of the employment the fact that it may have been done maliciously and wilfully does not affect the superior's liability.

**5.** 45 Am.Jur.2d Interference § 26 (1969). Ohio courts have not dealt with this issue to date.

be sued individually therefor, since partners are jointly and severally liable for the wrongful acts of a partner under Ohio Rev. Code § 1775.14(A). If Carlo committed a tort against Battista, he could be found liable individually for the damages. Having determined that Carlo could not commit the tort of inducing his own partnership to breach a contract, we must determine whether Carlo committed any other act which the law considers to be a tort. Specifically, the question is whether a malicious repudiation of a contract is a tort in Ohio.

The rule of law in Ohio is stated in *Ketcham v. Miller,* 104 Ohio St. 372, Syl. 1, 136 N.E. 145 (1922):

> Where a petition avers the execution of a contract, avers the value of the contract to the petitioner, avers the breach thereof by the defendant, avers the damage to be in a sum equal to the value of the contract, the gravamen of the complaint is the breach of the contract, and the action sounds in contract, and the averment that the breach was unlawful, wilful, wanton, and malicious does not change the action from one *ex contractu* to one *ex delicto.*

This action cannot be distinguished from that described in the syllabus quoted above. In Count I Battista averred that Lebanon repudiated the contract and averred the amount of damages caused by the breach. Count II incorporated the averments of Count I and added the averment that the repudiation was accomplished by Carlo acting solely out of malice and spite. According to *Ketcham* the addition of an averment of malice does not change a contractual action into one in tort.

In discussing the rule of *Ketcham* one commentator states:

> The character of an action as one in tort or as an action ex contractu is determined by whether it arises from the breach of some agreement of the parties, or from a violation of some duty imposed upon a party by law, independent of contract or the will of either. (1 O.Jur.2d *Actions* § 16, p. 273 (1953)).

It is no tort to carry a feeling of malice toward a person; it is no tort to breach a contract, regardless of motive. A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed. However, when the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract. The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation. *Bowman v. Goldsmith Bros. Co.,* 109 N.E.2d 556, 63 Ohio Law Abst. 428 (Ct.App.1953).

Recently two lower courts in Ohio have allowed a tort recovery for a malicious refusal to perform a contractual obligation. In *Kirk v. Safeco Ins. Co.,* 28 Ohio Misc. 44, 273 N.E.2d 919 (C.P.1970), the court allowed punitive damages in tort against an insurance company which dealt maliciously and in bad faith with a claimant in attempting to settle a claim. In *Sweet v. Grange Mut. Cas. Co.,* (unreported, No. 607, Ct.App. Ashland County, June 30, 1975), another insurer was found liable in tort for maliciously refusing to pay full value for an automobile which had been totally destroyed and which belonged to a disabled Viet Nam veteran who depended upon it as his only means of transportation.

These cases are the first in Ohio to recognize the legal trend toward punishing an insurance company for willful refusal to pay a valid claim. Such a tort claim, however, is founded upon a legal duty rather than upon a contractual duty.

> An insurer owes to its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy. (*Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 A.L.R.3d 286, 305 (1970)).

*See Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 429, 58 Cal.Rptr. 13, 426 P.2d 173 (1967). This special duty, enforced through tort lia-

bility, is necessary because of the relationship between the parties and the fact that in the insurance field the insured usually has no voice in the preparation of the insurance policy and because of the great disparity between the economic positions of the parties to a contract of insurance; and furthermore, at the time an insured party makes a claim he may be in dire financial straits and therefore may be especially vulnerable to oppressive tactics by an insurer seeking a settlement or a release.[6]

 The special considerations existent in a consumer-held insurance contract do not apply to an ordinary contract between businessmen. In view of the unbroken line of authority in Ohio that a breach of contract does not create a tort claim, regardless of the motive of the promisor, and that no punitive damages are available for a breach of contract,[7] we find that Battista has no claim *ex delicto* under the law of Ohio. To hold otherwise would be to abandon the venerable rule that the motive of a breaching party to a contract is irrelevant to the merit of the promisee's claim, and would allow parties to convert contract actions into actions in tort by attacking the motive of the breaching party, a course of action precluded by the rule of *Ketcham*.

 Two consequences arise from our holding that Battista has an action for breach of contract but not one in tort: First, Carlo's liability is joint but not several under Ohio Rev.Code § 1775.14(B); and second, Battista cannot recover exemplary damages or attorney's fees.

 The District Court erred in holding that Count II of the complaint stated a claim against Carlo. The judgment against

Carlo for $38,000 in compensatory damages and $10,000 in attorney's fees must be reversed.[8]

In view of the fact that the jury was instructed erroneously that it could not find Lebanon liable if it found Carlo's conduct to be malicious, it is necessary to grant a new trial in this case in order to protect the interests of both the plaintiff and Lebanon. Battista is entitled to jury consideration of his claim against Lebanon.

Lebanon has not raised any claims of prejudice in the conduct of the trial because it was not aggrieved by the judgment; however, the amount of damages awarded against Carlo could have been influenced by the malice shown. The showing of malice is irrelevant and was therefore prejudicial in a breach of contract action against Lebanon. Lebanon is entitled to jury consideration of the extent of its liability to Battista in a setting where the jury will not have an opportunity to award damages liberally, knowing that only the malicious partner must pay.[9]

We therefore decline to order judgment entered against Lebanon for the amount of compensatory damages against Carlo found by the jury, and we remand this action to the District Court for dismissal of Count II of the complaint and for a new trial on Count I.

 Carlo has raised several other claims of error during the trial which require comment. He contends that the letter of repudiation was effectively retracted by Carlo. In our opinion this is a factual question for the jury to determine.

 Carlo further contends that the trial court erred in permitting Battista to

---

**6.** *See also Motorists Mut. Ins. Co. v. Trainor,* 33 Ohio St.2d 41, 294 N.E.2d 874 (1973) (attorney's fees awarded against insurer who brought a declaratory judgment action seeking to avoid defending a negligence action against its insured).

**7.** *See* cases cited in 16 O.Jur.2d *Damages* § 157 n. 8 (rev.ed. 1971).

**8.** It will be noted that in the verdict (Exhibit "A" appended hereto) under the heading of Punitive Damages the jury answered "None".

It did allow, separately, compensatory damages of $38,000, and $10,000 for attorney's fees. In Ohio attorney's fees are a component part of compensatory damages awardable in cases where punitive damages are appropriate, *e. g.,* where malice is shown. 18 O.Jur.2d *Damages,* §§ 118, 119. However, this rule applies only to tort actions where malice is a relevant issue.

**9.** Battista offered evidence that Carlo had a net worth of more than a million dollars.

testify as to his ulcer, allegedly resulting from the breach of contract. Because the Court believed that Battista had a remedy in tort it admitted the testimony; however, the action upon remand will be *ex contractu;* this evidence will be irrelevant and therefore will be inadmissible.

Carlo further contends that he was entitled to a mistrial because of an emotional outburst by Battista's wife in the presence of several jurors. Since a new trial has been ordered this issue need not be discussed as it may not occur again.

Finally, Carlo contends that the District Court erred in admitting Battista's testimony that at the time the contract was repudiated he had planned to raise the price of the programs from thirty-five cents to fifty cents for the 1968 season. The purpose of this testimony was to show the amount of lost profits caused by the repudiation. Carlo argues that such evidence was inadmissible because it was speculative, and that a jury should not be permitted to award damages for lost profits based upon speculation. We agree.

■ The rule of law on lost profits is that the anticipated profits may be recovered only where such profits could reasonably have been contemplated by the parties as a probable result of the breach; such profits cannot be speculative or conjectural but must be shown with reasonable certainty.[10]

Evidence presented at the trial showed that from 1960 through 1966 Battista made and sold programs at Lebanon, for each of which he charged thirty-five cents, and paid Lebanon seven cents. In 1967 a written contract was made because Lebanon increased its share of the program price from seven cents to ten cents, and Battista wished to protect himself from further increases. The contract did not set an explicit selling price; Carlo contended that the contract term calling for the program to be produced "per 1966 format" implicitly set a price of thirty-five cents, as the price was printed on the face of the program.

The evidence also showed that in 1967 Battista's net profit from the contract was $8,700. Battista testified that since he had decided in January 1968 to raise the price to fifty cents per program, he computed his lost profits, using the fifty cent figure, to be $50,000 for the years 1968 and 1969. Battista, however, never told anyone of his plan to increase the program price.

■ While it was proper, in proving lost profits to a reasonable certainty, for the parties to show the past profit performance of the enterprise or the amount of profit called for in the contract, we believe it was wholly speculative for Battista to testify here that he would have realized an increase of annual profits of more than 300% of the 1967 contract if the contract had not been repudiated. Whatever might have been the result had that subjective intent been communicated to Lebanon, or otherwise corroborated, it does not by itself rise to the level of proof to a reasonable certainty.

Had Battista told Lebanon that he intended to increase the selling price to fifty cents per program, Lebanon might very well have insisted on increasing its price for the concession. On the other hand, it might also have taken action to prevent the price increase in order to protect the volume sales it depended on for its own profits from the transaction. We need not decide here what Lebanon might have done had Battista carried through with his unilateral decision to increase the price; the two possibilities suggested merely illustrate the complete uncertainty of any profits based on any uncommunicated price increase.

■ In contract law, unlike tort law, not all proximate consequential damages are recoverable, but only those which the parties, including the breaching party, could reasonably contemplate would arise from the breach. This situation is thus analogous to that described in Restatement, *Contracts* § 330 comment c (1932):

> If the contract for the resale of the goods is at a price that will net an extra-

**10.** *See* 16 O.Jur.2d *Damages* § 96 (rev.ed.1971).

ordinary profit . . . the seller . . . of the goods does not have reason to foresee that these extraordinary injuries will be caused by his breach, unless he knows or has reason to know the terms of the contract of resale.

Here, Lebanon had no reason to know that the proposed sale price in 1968 would greatly increase Battista's profit over that realized in 1967. Because Battista did not inform Lebanon of his proposed price increase, the jury when computing compensatory damages should not have been permitted to consider his testimony that he intended to increase the price. It was error to admit such testimony.

The judgment of the District Court is reversed and the cause is remanded for a new trial.

APPENDIX

EXHIBIT "A"

A. O. Form No. 156 (May 1955) Verdict 2

# United States District Court
### FOR THE

Southern District of Ohio

Peter L. Battista, Jr.,
 Plaintiff,

 v.

Lebanon Tortting Association
and John J. Carlo,
 Defendants.

No. 6882

FILED

JAN 3 1 1975
*6:32 P.M.*

JOHN D. LYTER, CLERK

We, the Jury, unanimously find the issues in favor of plaintiff, Peter L. Battista, Jr. and against defendant John J. Carlo only. We award damages as follows:

Compensatory Damages *38,000.00*

Punitive Damages ~~5,000.00~~ *None*

Attorney Fees *10,000.00*

*Jan 31*, 19 *75* *David L. Rheinfranh*
 (Date) (Foreman)

*DLR* 26