Welford L. COTTON and James Roger Cotton, Plaintiffs,

v.

OTIS ELEVATOR COMPANY and Richard M. Whiston, Defendants.

Civ. A. No. 3:85–0580.

United States District Court, S.D. West Virginia, Huntington Division.

Jan. 24, 1986.

tation. These technical difficulties have made administration of the law problematic, created a climate of uncertainty for investors, and raised the possibility of unintended tax benefits for some and harsh consequences for others."

Wood, Grimm & Delp, Huntington, W.Va., for plaintiffs.

Stephen P. Goodwin, Richard D. Owen, Goodwin & Goodwin, Charleston, W.Va., for defendants.

### ORDER

HADEN, Chief Judge.

Welford and James Cotton, residents of West Virginia, assert breach of contract and tort claims against Otis Elevator Company and Richard Whiston. Otis is a New Jersey corporation with its principal place of business in Connecticut, and Whiston is a resident of Connecticut. Jurisdiction is founded in this Court under 28 U.S.C. § 1332. Several motions are pending requiring this Court's attention prior to the close of discovery and trial of this matter.

The Cottons, until November 19, 1981, were the sole shareholders of the Cotton Elevator Company which was in the business of installing, servicing and selling freight and passenger elevators. On November 19, 1981, Otis and the Plaintiffs entered into an agreement for the purchase and sale of stock in the Cotton Elevator Company to Otis. The terms of the agreement provide, among other things, for Otis to pay the Cottons the sum of $298,467.57 on the closing of the agreement on November 19, 1981, $50,000 on each November 19 for the succeeding four years (1982 through 1985) and $65,000 on November 19, 1986. Whiston, by letter dated August 28, 1984, informed the Cottons that Otis would not be paying the $50,000 installment due on November 19, 1984, and also would refuse to pay the two remaining installments after that date.

Count One of the Cottons' complaint complains of this anticipatory breach of contract. Count Two of the Cottons' complaint claims that Otis breached its express and implied agreement to negotiate contractual disputes in good faith. In Count Three of the Cottons' complaint, the Plaintiffs allege that Whiston tortiously caused Otis to breach its contract with the Cottons.

Several motions are pending. Otis and Whiston move to dismiss various aspects of the complaint and the Plaintiffs have moved for partial summary judgment. Otis seeks to dismiss Count Two on the grounds that West Virginia does not recognize a tortious breach of contract and further that punitive damages could not be awarded for breach of contract. Whiston seeks to dismiss Count Three alleging tortious interference of another's contract. The Plaintiffs seek partial summary judgment on the basis of certain requests for admissions filed with the complaint. The Court will consider the motions in the order stated above.

Otis' motion to dismiss Count Two is founded upon the theory that a mere breach of contract does not give rise to a tort claim. In *Short v. Grange Mutual Casualty Co.*, 307 F.Supp. 768 (S.D.W.Va. 1969), the Court, sitting in diversity and applying West Virginia law, held that mere breach of a contractual duty does not give rise to a tort claim. 307 F.Supp. at 772.

The Court finds persuasive the proposition stated in *Battista v. Lebanon Trotting Association*, 538 F.2d 111 (6th Cir.1976), which held:

"It is no tort to carry a feeling of malice toward a person; it is no tort to breach a contract, regardless of motive. A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed. However, when the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the bargain arises only from the contract. The tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation [citations omitted.]"

538 F.2d at 117. Other courts have similarly held. *Coastal Plains Feeders, Inc. v. Hartford Fire Insurance Co.*, 545 F.2d 448, 456 (5th Cir.1977) (applying Alabama law); *First National Bank of Akron v. Cann*, 503 F.Supp. 419, 438–39 (N.D.Ohio 1980) (applying Ohio law); *see also Jaskey Finance and Leasing v. Display Data Corp.*, 564 F.Supp. 160, 166 (E.D.Pa.1983) (applying Maryland law, finding breach of warranty under Uniform Commercial Code as not stating actionable tort); *but see Roberts v. Western-Southern Life Ins. Co.*, 568 F.Supp. 536, 552 and n. 41 (N.D.Ill. 1983) (finding publicly imposed duty on insurers which makes bad faith breach of insurance contract actionable in tort).

Plaintiffs assert that *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978) and *Jenkins v.*

*J.C. Penney Casualty Co.*, 280 S.E.2d 252 (W.Va.1981), have rendered *Short* obsolete. *Harless* held actionable in tort the discharge of a bank employee where the cause of the discharge was the employee's objection to the bank's failure to comply with state and federal consumer credit protection laws. The West Virginia Supreme Court of Appeals stated at 246 S.E.2d at 273:

"[A]n employer may subject himself to liability if he fires an employee who is employed at will if the employee can show that the firing was motivated by an intention to contravene some substantial public policy."

In the *Harless* case, the policy sought to be protected is reflected by federal and state statutes protecting consumer borrowers. *Jenkins* was similarly no mere breach of contract. In that case, the West Virginia Supreme Court of Appeals construed *W.Va.Code*, § 33–11–4(9), which relates to the conduct of insurance companies. Again, there is an express public policy—in the form of a statute—which imposes a standard of conduct independent of the contract.

In the instant action, the Plaintiffs offer no particular public policy—other than the duty to bargain in good faith—which involves a publicly imposed duty of conduct upon the Defendants. The Court is unaware of any West Virginia Supreme Court of Appeals case recognizing "bad faith" as an independent tort absent some contention that a more particularly recognizable public policy has been breached. The parties have cited no such West Virginia case.

Accordingly, this Court concludes that the fundamental proposal stated in *Short* is still a valid interpretation of West Virginia law. Count Two of the Plaintiffs' complaint, therefore, fails to establish a tort theory of recovery under the facts provable under its assertions. The Court notes, however, that the "good faith" term referred to in Count Two of the Plaintiffs' complaint both impliedly and expressly included in the contract and as such, Count Two does state a claim for breach of con-

tract. For this reason, Count Two will not be dismissed inasmuch as it states a claim for breach of contract.

■ The second portion of Otis' September 5, 1985, motion, asserts that punitive damages are not recoverable for breaches of contract. Indeed, *Short* holds that "punitive damages, without exception, are not recoverable in breach of contract actions, and this is true even if the breach is willful." *Short*, 307 F.Supp. at 773. *Horn v. Bowen*, 136 W.Va. 465, 469, 67 S.E.2d 737 (1951) (punitive damages not awardable in breach of contract action). *Cf. Teller v. McCoy*, 162 W.Va. 367, 253 S.E.2d 114, 138 (1979) (Neely, J. dissenting) (the law seeks to redress one's actual losses and not to bestow a profit on the injured party).

As the Court has determined that the complaint alleges only a breach of contract as to Otis, punitive damages against Otis are not recoverable in this action.

■ Defendant Whiston, by motion filed June 20, 1985, seeks dismissal of Count Three against him on the basis that this Court lacks personal jurisdiction * over him and that the third count of the Plaintiffs' complaint fails to state a cause of action for tortious interference of another's contract. This claim in tort is set out in the *Restatement (Second) of Torts*, § 766 (1979):

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

From this description, the Court discerns at least three elements which must be provable under the allegations made in the Plaintiffs' complaint. First, that the Defendant intentionally and improperly interfered with the performance of the contract; second, that the contract is between "another and a third person"; and third, that the Defendant actually induced or otherwise caused the "third person" not to perform the contract. The Plaintiffs allege that Whiston intentionally and improperly interfered with the performance of a contract and actually caused this contract not to be performed. The dispute arises over whether Otis Elevator may be considered a "third person".

A review of the pleadings discloses that at Paragraph 11 of the Plaintiffs' complaint, the Plaintiffs assert the following:

"The Defendant, Richard M. Whiston, (hereinafter 'Whiston') was at all times pertinent hereto and still is, and was at all times pertinent hereto [sic] acting in the capacity of, the agent, attorney and general counsel of Otis."

Also, the Plaintiffs include as Exhibit 2 to their complaint a letter from Whiston on Otis Elevator Company letterhead which identifies Whiston as "Vice President and Counsel".

■ Only a third party to a contract may be held liable for intentional interference of another's contract. *Brown v. Loudoun Golf and Country Club, Inc.*, 573 F.Supp. 399, 404 (E.D.Va.1983). A corporation cannot tortiously interfere with an agreement to which it is a party and accordingly, where an agent breaches a contract to which his principal is a party on behalf of his principal, no cause of action for tortious interference with regard to such contract can be had. *DuSesoi v. United Refining Co.*, 540 F.Supp. 1260, 1275 (W.D.Pa.1982).

■ In the instant action, the complaint alleges that Whiston is proceeded against in his capacity as an agent for Otis. As such, Whiston cannot be held liable for

---

* The matter of personal jurisdiction is not well developed factually in this matter. To attempt to determine this issue as this juncture would require that the Court consider facts which are presented only as assertions in the Defendant's memoranda. As the Defendant Whiston has not demonstrated his right to relief on this issue, the Court denies his motion to dismiss on jurisdictional bases.

tortious interference in his principal's contract. Accordingly, the Court dismisses Count Three of the Plaintiffs' complaint.

The Plaintiffs by motion filed July 18, 1985, seek partial summary judgment based upon requests for admissions filed with the Plaintiffs' complaint. In responding to the requests for admissions, the Defendants moved for a protective order and subsequently responded to the requests for admissions. The Court would allow the responses filed July 24, 1985, to stand. The Court would, on the basis of this ruling, deny the Plaintiffs' motion for partial summary judgment without prejudice, and the Plaintiffs may renew their motion in light of other discovery obtained within the time frame prescribed by the Pretrial Procedures and Final Scheduling Order entered August 23, 1985.

In light of the ruling of this Court, discovery in this matter shall be extended so that it may be completed—as that term is defined in the Pretrial Procedures and Final Scheduling Order, entered August 23, 1985—not later than February 7, 1986. Further, Defendant Whiston's motion for protective order filed July 10, 1985, is denied.