[Cite as *Union Sq. Realty, Inc. v. Golfers & Hackers, Inc.*, 2011-Ohio-1882.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| UNION SQUARE REALTY, INC. | JUDGES:<br>Hon. Julie A. Edwards, P. J. |
| Appellee/Cross-Appellant | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| GOLFERS & HACKERS, INC. | |
| Appellant/Cross-Appellee | Case No. 2010 CA 00005 |
| -vs- | |
| MARILYN SCHOPP | |
| Appellee-Cross-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common Pleas, Case No. 2008 CV 02514


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    April 18, 2011


APPEARANCES:

For Appellees/Cross Appellants

KARL H. SCHNEIDER
MARK R. METERKO
MAGUIRE AND SCHNEIDER
250 Civil Center Drive, Suite 500
Columbus, Ohio  43215

For Appellant/Cross-Appellee

DAVID B. SPAULDING
157 Wilbur Drive, NE
North Canton, Ohio  44720

*Wise, J.*

**{¶1}**   Defendant-Appellant Golfers & Hackers, Inc. appeals the December 29, 2009, decision of the Stark County Court of Common Pleas awarding Defendant-Appellee Union Square Realty, Inc. $17,500 on their Complaint and awarding Golfers & Hackers $12,000 on its Third-Part Complaint against Marilyn Schopp.

## STATEMENT OF THE CASE AND FACTS

**{¶2}**   Union Square Realty, Inc., doing business as Re-Max Home Center, ("Union Square") is a real estate brokerage owned by Marilyn Schopp ("Schopp"). (T. at 31). Golfers & Hackers, Inc. ("Golfers & Hackers") is a corporation owned by four shareholders, including Lane Witte, Eric Kerzan and Chris Kerzan. (T. at 133).

**{¶3}**   Union Square filed a complaint seeking unpaid commissions from Golfers & Hackers. Golfers & Hackers, in turn, filed a counterclaim against Union Square, and a third-party complaint against Marilyn Schopp, the owner of Re/Max, setting forth claims for tortious interference with a contract and breach of fiduciary duty, among others, arising out of the filing of a broker's lien by Union Square.

**{¶4}**   The case proceeded to a bench trial on November 3rd and 4th of 2009.

**{¶5}**   At trial, the following relevant facts were presented:

**{¶6}**   On September 23, 2004, Appellant/Cross-Appellee, Golfers & Hackers, Inc., entered into an exclusive Listing Agreement with Union Square Realty for the sale of 30 acres of real estate located at Schubert Avenue in Alliance, Ohio. The Listing Agreement, which contained an expiration date of March 23, 2005, contained a listing price of $750,000.00. Pursuant to the Listing Agreement, Union Square was to receive a commission of 5.5% of the sale price of the Property.

**{¶7}** During the term of the Listing Agreement period, there were no purchase offers made on the Property. (Tr. p. 251).

**{¶8}** On April 1, 2005, Appellee Re/Max obtained an offer from a prospective buyer, Newton Square, in the amount of $600,000.00. Thereafter, Appellee Marilyn Schopp contacted Golfers & Hackers and informed Lane Witte, one of Appellant's shareholders, that she had a party interested in the real estate. The identity of the interested party was not disclosed during the initial telephone conversation between Appellee Schopp and Mr. Witte. (T. at 210). According to Appellant, during this telephone conversation, discussion was had regarding the expiration of the listing agreement and Appellee Schopp was advised that the new sale terms would be "net $675,000 to the seller." Mr. Witte's testimony regarding this telephone conversation was as follows:

**{¶9}** "Q. Was there mention during that initial telephone call as to what the sales terms were from that point forward?

**{¶10}** "A. Yes.

**{¶11}** "Q. What did you tell Ms. Schopp regarding the sales terms from that point forward?

**{¶12}** "A. Net $675,000.

**{¶13}** "Q. By net 675 what did you mean?

**{¶14}** "A. Net in our pocket.

**{¶15}** "Q. Her real estate commission was to be above that?

**{¶16}** "A. Yes.

**{¶17}** "Q. Did she say she understood that?

**{¶18}** "A.    Yes."  (T. at 252).

**{¶19}** Following this telephone conversation, Mr. Witte sent a letter to Appellee Schopp dated April 12, 2005, which stated that  Appellee's listing had expired and that the shareholders of Golfers & Hackers were attempting to market the property themselves. This correspondence also stated that the terms of sale were "net $675,000" to the Seller. (T. at 41-42, 252).

**{¶20}** On April 15, 2005, a meeting was held at the Re/Max office in Alliance, Ohio, during which two of the shareholders of Golfers & Hackers were introduced to the prospective buyer, Newton Square. Mr. Witte, who was present at the meeting provided the following account of what took place:

**{¶21}** "Q.  At some later point did you have a meeting in Marilyn Schopp's office?

**{¶22}** "A. Yes.

**{¶23}** "Q. You were introduced to somebody from Newton Square at that meeting?

**{¶24}** "A. Yes, we were.

**{¶25}** "Q. Do you remember what was said at the meeting concerning Ms. Schopp's listing and the purchase price?

**{¶26}** "A.    Purchase price was net 675.

**{¶27}** "Q.    Was that voiced to Marilyn Schopp at the meeting?

**{¶28}** "A.    Yes."

**{¶29}** "Q.    Was it also voiced to her that her contract listing contract had expired?

**{¶30}** "A.   Correct." (T. at 253-254).

**{¶31}** It is unclear from the record whether Appellee Schopp had any further involvement in the subject real estate transaction after the April 15, 2005, meeting. Ms. Schopp and Joe Bennett, a real estate broker previously working for Re/Max, testified that she was present at two meetings involving Newton Square. Mr. Witte, however, testified that after the initial meeting on April 15, 2005, Appellant dealt directly with Newton Square and Appellee Schopp was not involved in any subsequent proceedings involving the sale.

**{¶32}** As a result of the negotiations at the April 15th meeting, Golfers & Hackers made a counter-offer to Newton Square to sell for $675,000.

**{¶33}** A second meeting occurred in early May, 2005.  This meeting was also at Union Square's office with Schopp present. (T. at  43, 148). As a result of this meeting, Newton Square made an additional counter-offer to purchase the property for $675,000, but on different payment terms from those requested by Golfers & Hackers.

**{¶34}** Subsequently, Golfers & Hackers and Newton Square continued to negotiate over the sale of the Property, and eventually entered into a purchase contract on June 15, 2005 for $650,000. (T. at 185-86). Appellee Schopp admits that she was not involved in this stage of the negotiations.

**{¶35}** Upon discovering the June 15th purchase contract, Union Square filed a broker's lien on August 15, 2005, pursuant to R.C.1311.88, in the amount of $33,000, in an attempt to protect its right to a commission arising from the sale. (T. at 49-59). The broker's lien affidavit contained inaccurate information, including the incorrect contract price and date. (T. at 108). Further, the initial offer of $600,000 was attached

to the lien affidavit, rather than the June 15th purchase agreement, and the listing agreement reflected an expiration date of July 23, 2005.

**{¶36}** In the meantime, Newton Square decided to back out of the June 15th contract because of a marketing study it conducted on the Property. (T. at 188).

**{¶37}** As a result of Newton Square's breach of contract, Golfers & Hackers filed a lawsuit against Newton Square seeking specific performance of the June 15th contract. (T. at 221-23).

**{¶38}** Golfers & Hackers claims that the filing of the broker's lien by Appellee affected its ability to negotiate a settlement of the lawsuit against Newton Square. (T. at 221-23).

**{¶39}** The lawsuit between Newton Square and Golfers & Hackers eventually settled with Newton Square agreeing to purchase the Property for $630,000. (T. at 226). This settlement agreement was also breached by Newton Square. (T. at 226).

**{¶40}** In July, 2006, Newton Square and Golfers & Hackers eventually agreed upon a purchase price for the Property of $591,000. (T. at 137-138, 225). Under this purchase contract, the closing was to occur on July 26, 2006, however, the parties agreed to extend the closing date until August 16, 2006, in order to wait for Union Square's lien to expire. (T. at 233). The transaction closed on August 25, 2006. Union Square received no commission for this sale. (T. at 57).

**{¶41}** On December 28, 2009, the trial court issued a final Judgment Entry. In the Judgment Entry, the trial court entered judgment in favor of Union Square in the amount of $17,500, finding that Union Square was entitled to unpaid commissions under the doctrine of procuring cause. The trial court also found in favor of Golfers &

Hackers in the total amount of $12,000, on its counterclaim against Union Square and its third-party complaint against Schopp, as to its claims for filing a materially inaccurate broker's lien, tortious interference with a contract, tortious interference with a business relationship and breach of fiduciary duty.

**{¶42}** This Court, by Opinion filed November 15, 2010, found that it was unable to reconcile the numbers as contained in the trial court's final calculation of damages on both Appellee's Complaint and Appellant's Counter-claim and remanded the matter back to the trial court for the "sole purpose of setting forth how it arrived at the damage awards set forth in its final paragraph and the calculations it used in arriving at same."

**{¶43}** By Judgment Entry filed December 16, 2010, the trial court filed a clarifying Judgment Entry, wherein it stated:

**{¶44}** "1)   The Court finds that the Plaintiffs effort does entitle it to some amount of compensation. Defendant's principal, Lane Witte, admitted at the trial that the Plaintiffs services benefited Defendant and that Defendant had planned at one point to compensate Plaintiff in some amount at the closing of the sale of the property. Therefore, the Court needs to conclude what that amount would be. The Court has recognized the Plaintiffs efforts and has awarded it approximately 47% of the previously contracted commission with the Plaintiff, which would have been $35,750.00. Therefore, the Court awards the Plaintiff the sum of $17,000.00.

**{¶45}** "On the other hand, Plaintiff, through their agent Schopp, breached a fiduciary duty when Ms. Schopp filed a false lien. The Court factored in that Golfers and Hackers provided evidence that they were incurring interest on its mortgage in excess of $4,000.00 per month because it was unable to sell the property. Based on

that representation, the Court has awarded Defendant damages in the amount of three months of interest on the property, totaling $12,000.00.

**{¶46}** "As a result, the Court finds for the Plaintiff on its complaint in the amount of $17,000.00. The Court finds for Defendant on its counterclaim in the amount of $12,000.00."

**{¶47}** The parties requested and were granted time to file supplemental briefs.

**{¶48}** This matter is now before the Court, with Appellant Golfers & Hackers and Appellees Union Square Realty, Inc. and Marilyn Schopp each appealing, assigning the following errors for review:

<u>**ASSIGNMENTS OF ERROR**</u>

**APPEAL**

**{¶49}** "I. THE TRIAL COURT ERRED IN AWARDING A REAL ESTATE COMMISSION TO THE APPELLEE BASED ON THE EQUITABLE DOCTRINE OF PROCURING CAUSE, WHEN THE APPELLEE ENGAGED IN DECEITFUL CONDUCT, BREACHED ITS DUTY OF GOOD FAITH AND LOYALTY TO THE APPELLANT AND TOOK ACTION TO HINDER THE REAL ESTATE TGRANS-ACTION [SIC] DIRECTLY RESULTING IN DAMAGES TO THE APPELLANT.

**{¶50}** "II. THE TRIAL COURT ERRED IN AWARDING A REAL ESTATE COMMISSION TO THE APPELLEE UNDER THE THEORY OF PROCURING CAUSE WHEN THE APPELLANT EXPRESSLY MADE PAYMENT OF A COMMISSION DEPENDENT ON THE BROKER OBTAINING A MINIMUM SELLING PRICE AND THE BROKER FAILED TO PRODUCE A BUYER AT THE MINIMUM SELLING PRICE.

**{¶51}** "III. IN AWARDING THE APPELLEE A REAL ESTATE COMMISSION, THE TRIAL COURT FAILED TO CONSIDER ALL OF THE ELEMENTS OF THE DOCTRINE OF PROCURING CAUSE AND THEREBY IMPROPERLY APPLIED THE PROCURING CAUSE DOCTRINE TO THE FACTS OF THIS CASE.

**{¶52}** "IV. THE TRIAL COURT IMPROPERLY CALCULATED THE DAMAGES TO WHICH APPELLANT WAS ENTITLED PURSUANT TO ITS COUNTERCLAIM AND THIRD-PARTY COMPLAINT."

## CROSS-APPEAL

**{¶53}** "I. THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST UNION SQUARE AND SCHOPP AS TO THE COUNTERCLAIM AND THIRD-PARTY COMPLAINT BASED ON THE FILING OF THE BROKER'S LIEN.

**{¶54}** "II. THE TRIAL COURT ERRED IN CONCLUDING THAT UNION SQUARE AND SCHOPP TORTIOUSLY INTERFERED WITH A CONTRACT BETWEEN GOLFERS & HACKERS AND NEWTON SQUARE WHERE THERE WAS NO EVIDENCE TO SUPPORT THE CONCLUSION THAT UNION SQUARE AND SCHOPP INTENTIONALLY PROCURED THE CONTRACT'S BREACH.

**{¶55}** "III. THE TRIAL COURT ERRED IN CONCLUDING THAT UNION SQUARE AND SCHOPP TORTIOUSLY INTERFERED WITH A BUSINESS RELATIONSHIP BETWEEN GOLFERS & HACKERS AND NEWTON SQUARE WHERE THERE WAS NO EVIDENCE TO SUPPORT THE CONCLUSION THAT UNION SQUARE AND SCHOPP INTENTIONALLY CAUSED THE TERMINATION OF THE BUSINESS RELATIONSHIP.

**{¶56}** "IV. THE TRIAL COURT ERRED IN CONCLUDING THAT UNION SQUARE AND SCHOPP BREACHED A FIDUCIARY DUTY TO GOLFERS & HACKERS BECAUSE AT THE TIME UNION SQUARE FILED THE BROKER'S LIEN, UNION SQUARE AND SCHOPP DID NOT HAVE A FIDUCIARY RELATIONSHIP WITH GOLFERS & HACKERS.

**{¶57}** "V. THE TRIAL COURT ERRED BY FAILING TO AWARD COMMISSION TO UNION SQUARE IN THE AMOUNT PROVIDED FOR BY THE LISTING AGREEMENT."

### I., II., III.

**{¶58}** We shall address Appellant's first, second and third assignments of error together as each address Appellant's assertion that the trial court erred in applying the doctrine of procuring cause in the case sub judice. We disagree.

**{¶59}** The procuring cause doctrine is an equitable tool which permits a broker to recover a commission for the sale of property in the absence of a contract. See *Peirce v. J.C. Meyer Co., Inc.,* Richland App. Nos. 2005-CA-125, 2005-CA-114, 2006-Ohio-4237. Under the equitable doctrine of "procuring cause" a real estate broker can recover after the contract expires if he can prove a series of events, without a break in continuity, which directly produce a purchaser ready, willing, and able to purchase the real estate on the owner's terms. Id.

**{¶60}** Invoking this doctrine, Union Square maintains its entitlement to a commission as the procuring cause of the sale despite the expiration of the listing contract. In order for this doctrine to apply, certain conditions must be met. The following often-quoted definition for "procuring cause" elucidates these conditions:

**{¶61}** "The term, 'procuring cause',  as used in describing a broker's activity, refers to a cause directly originating a series of events which[,] without break in their continuity[,] directly result in the accomplishment of the prime objective of the employment of the broker, namely, the producing of a purchaser ready, willing and able to buy real estate on the owner's terms." *Bauman v. Worley* (1957), 166 Ohio St. 471, paragraph two of the syllabus. A broker is not entitled to recover a commission for the sale of real estate merely because he incurred expenses or spent time in an attempt to sell the property. Id.

**{¶62}** The gist of Appellant's argument is that the trial court's decision to award Appellee a real estate commission was against the manifest weight of the evidence. An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case. *C.E. Morris Co. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. "A reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions." *Hooten Equipment Co. v. Trimat, Inc.,* 4th Dist. No. 03CA16, 2004-Ohio-1128, ¶ 7. We are to defer to the findings of the trier of fact because in a bench trial the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State*

*Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. 621, 66 Ohio St.3d 619, 614 N.E.2d 748.

{¶63} In the case sub judice, the trial court made a factual determination that Union Square was entitled to compensation for its efforts in the amount of $17,000.00, which represented approximately 47% percent of the commission set forth in the listing agreement. ($650,000 x 5.5% = $35,750; $35,750 x 47% = $16,802.50, which the trial court rounded up to $17,000.00). The trial court based this determination in part on its findings that Golfers & Hackers was aware that Union Square was continuing to work on their behalf despite the expiration of the contract and that Schopp arranged at least two meetings between Newton Square and Golfers & Hackers. The trial court also based its decision on the statements by Golfers & Hackers principal, Lane Witte, who admitted that Appellees' services benefitted them and that they had in fact planned on compensating them in some amount at the real estate closing.

{¶64} After reviewing the record, we find upon the whole record presented that the judgment of the trial court is supported by competent and credible evidence upon which the trial court could have based its conclusions.

{¶65} Appellant's first, second and third assignments of error are overruled.

IV.

{¶66} In its fourth assignment of error, Appellant argues that the trial court improperly calculated damages. We disagree.

{¶67} Appellant argues that the trial court erred in only awarding interest incurred on the mortgage and not awarding the attorney fees incurred in pursuing the slander of title action against Ms. Schopp and the reduction in the purchase price.

{¶68} Upon review, we find that the trial court, in addition to finding that the filing of the lien affidavit caused Appellant's to incur additional interest on the mortgage, also found that Newton Square breached the June 15, 2005, purchase contract. This breach also contributed to the damages incurred by Appellant. Appellant filed an action for specific performance of the June 15, 2005, purchase agreement, but ultimately settled the action by negotiating a new purchase agreement on July 21, 2006, in the amount of $591,000.

{¶69} The decision whether to grant attorney fees is committed to the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. *Demo v. Demo* (1995), 101 Ohio App.3d 383, 388-389, 655 N.E.2d 791.

{¶70} As to the failure of the trial court to award attorney fees incurred in pursuing the slander of title action, the trial court herein could have found that because Appellant dismissed their slander of title action, it was not entitled to attorney fees.[1]

{¶71} Based upon the above, we cannot find that the trial court erred in not including attorney fees or the reduction in the purchase price in its damage award as it could have found that the filing of the broker's lien was not the only proximate cause of these damages.

{¶72} Appellant's fourth assignment of error is overruled.

### CROSS-APPEAL

### I., II., III. and IV.

{¶73} In Cross-Appellant's first four assignments of error, they argue that the trial court erred in finding that the filing of the broker's lien in this case tortiously

---

[1] R.C. 1311.88(c) provides that the prevailing party can recover attorney fees arising out of litigation over a broker's lien.

interfered with a business relationship and breached a fiduciary duty with Cross-Appellees. We disagree.

{¶74} "A real estate broker, acting within the scope of his agency, owes the fiduciary duties of disclosure, good faith, and loyalty to the seller. When the broker breaches his fiduciary duties, commits fraud, acts in bad faith, or otherwise breaches the seller's trust, he is precluded from recovering a commission." *Fuller & Associates, Inc. v. Adams Title Agency, Inc.*, Stark App. No. 2003 CA 00253, 2003-Ohio-5923.

{¶75} A claim of tortious interference with contract arises when one party to a contract is induced to breach the contract by the malicious acts of a third person who is not a party to the contract. *Battista v. Lebanon Trotting Assn.* (6th Cir., 1976), 538 F.2d 111, 116.

{¶76} In *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, the Ohio Supreme Court outlined the elements of tortious interference with a contract. The elements are (1) the existence of contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the breach, (4) lack of justification, and (5) resulting damages. *Siegel,* paragraph one of the syllabus. The Supreme Court noted that the establishment of the fourth element of the tort, namely lack of justification, requires proof that the defendant's interference with another's contract was improper.

{¶77} In this case, the trial court found that Cross-Appellant Union Square, through its agent, Marilyn Schopp, breached a fiduciary duty and interfered with the real estate contract between Cross-Appellees and Newton Square when she filed a false broker's lien.

**{¶78}** In its Dec, 28, 2009, Judgment Entry, the trial court found:

**{¶79}** "…Schopp's actions engaged in deceitful conduct and breached her duty of good faith and loyalty to Golfers & Hackers, thereby forfeiting a portion of the right she may have had to a commission. [citation omitted]. Schopp's actions of causing a materially inaccurate and false affidavit to be filed against the real estate was a tortuous [sic] interference with the contractual relationship between Golfers & Hackers and Newton Square. More importantly, Golfers & Hackers' representative Lane Witte even contacted Schopp's attorney and advised them that the affidavit was false, yet Schopp still failed to release the lien.

**{¶80}** "Golfers & Hackers has proven that Union Square and/or Schopp took action to hinder the formation of the contract or to hinder a contract formation, without priviledge [sic], and that the improper action terminated a business relationship for Golfers & Hackers, resulting in damages. [citation omitted].

**{¶81}** "Union Square, through their agent, Schopp, also breached an existing fiduciary duty, which resulted in injury to Golfers & Hackers. Golfers & Hackers testified that the false lien affidavit that was filed against it was used to its disadvantage as leverage to negotiate a reduced price. As a result, Golfers & Hackers was incurring interest on its mortgage in excess of $4,000 per month because it was unable to sell the property. Furthermore, it was forced to accept a lesser offer from Newton Square for the purchase of the real estate of $591,000."

**{¶82}** The trial court herein found that on August 15, 2005, Marilyn Schopp filed a Lien Affidavit which contained false information. The trial court further found that this Lien Affidavit prevented Cross-Appellee from selling the property without paying Schopp

a $33,000 commission and that such was used as leverage in subsequent negotiations with Newton Square.

**{¶83}** Based upon Ms. Schopp's actions as set forth above, we find that the record contains ample evidence to support Cross-Appellee's claim for tortious interference with a business relationship and breach of a fiduciary duty.

**{¶84}** Cross-Appellants' first, second, third and fourth assignments of error are overruled.

## V.

**{¶85}** In its fifth assignment of error, Cross-Appellants argue that the trial court erred in not awarding the commission provided in the listing agreement. We disagree.

**{¶86}** In the case sub judice, the trial court found that the doctrine of procuring cause was applicable in this case, therein finding that Cross-Appellant was entitled to some compensation for its efforts in arranging the real estate sale. The trial court, based on the testimony and evidence before it, determined the value of those efforts equaled $17,000.00.

**{¶87}** While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker,* Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26.

**{¶88}** We find that in this case, the record supports the trial court's findings.

**{¶89}** Cross-Appellants' fifth assignment of error is overruled.

**{¶90}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Edwards, P. J., and

Gwin, J., concur.

_____

_____

_____

JUDGES

JWW/d 0329

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


UNION SQUARE REALTY, INC.     :

     Appellee/Cross-Appellant     :

-vs-     :

GOLFERS & HACKERS, INC.     :     JUDGMENT ENTRY

     Appellant/Cross-Appellee     :

-vs-     :

MARILYN SCHOPP     :

     Appellee/Cross-Appellant     :     Case No.  2010 CA 00005


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed equally to Appellees and Appellant.


_____

_____

_____

JUDGES