CENTENNIAL INSURANCE CO., APPELLANT, *v.*
LIBERTY MUTUAL INSURANCE CO., APPELLEE.

[Cite as Centennial Ins. Co. v. Liberty Mut. Ins. Co. (1980), 62 Ohio St. 2d 221.]

(No. 79-652—Decided May 21, 1980.)

*Mansour, Gavin, Gerlack & Manos Co., L.P.A.,* and *Mr. Richard J. McGraw,* for appellant.

*Messrs. Baker & Hostetler* and *Mr. Albert J. Knopp,* for appellee.

PAUL W. BROWN, J.   It is settled law in this state that an insurer owes a duty to exercise good faith in defending and settling claims against the insured and that a breach of that duty will give rise to a cause of action by the insured. *Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185; *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148. The instant cause, however, presents a situation in which an excess insurer seeks recovery from a primary insurer. The great weight of authority approves such a cause of action, extending an insurer's duty to exercise good faith to include an excess insurer. *Home Ins. Co.* v. *Royal Indemnity Co.* (1972), 68 Misc. 2d 737, 327 N.Y. Supp. 2d 745, affirmed 332 N.Y. Supp. 2d 1003; *Allstate Ins. Co.* v. *Reserve Ins. Co.* (1976), 116 N.H. 806, 373 A. 2d 339; *American Fidelity & Cas. Co.* v. *All American Bus Lines, Inc.* (C.A. 10, 1951), 190 F. 2d 234, certiorari denied, 342 U.S. 851 (1951); *Valentine* v. *Aetna Ins. Co.* (C.A. 9, 1977), 564 F. 2d 292. See, generally, Keeton, Insurance Law 513-514, Section 7.8(d); Bloom, Recovery against Primary Insurer by Excess Carrier for Bad Faith or Negligent Failure to Settle, 36 Ins. Counsel J. 235.

In analyzing this type of situation these courts have set out

the reasons for allowing such a cause of action by the excess insurer. One court has noted that "***[w]hen there is no excess insurer, the insured becomes his own excess insurer, and his single primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability. If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position." *Continental Cas. Co.* v. *Reserve Ins. Co.* (1976), 307 Minn. 5, 8-9, 238 N.W. 2d 862. Accord *Portland General Electric Co.* v. *Pacific Indemnity Co.* (C.A. 9, 1978), 579 F. 2d 514.

Another court in reviewing this type of cause of action has stated that:

"Moreover, strong equitable and economic considerations also compel this result in the present case. The primary carrier's duty arises by way of a contract with the insured, and this duty is not reduced merely because of another contract between the insured and its excess insurer.

"An insurance company's duty to act in good faith in settling claims within its policy limits is well established and is reflected in its premiums. That an excess insurer may recover from the primary for a breach of duty does not increase the duty or the liability of the primary." *Peter* v. *Travelers Ins. Co.* (C.D. Cal. 1974), 375 F. Supp. 1347, 1350. Accord *Estate of Penn* v. *Amalgamated General Agencies* (1977), 148 N.J. Super. 419, 372 A. 2d 1124; *Valentine* v. *Aetna Ins. Co., supra* (564 F. 2d 292).

The fear has also been expressed that "[i]f the primary carrier is relieved of its duty to accept reasonable offers by the existence of excess insurance, it would put an additional financial liability on the excess carrier which would be reflected in increased premiums. It would also have the effect of reducing the incentive of a primary insurer to settle when the settlement offer is near or over its policy limits. This is contrary to the interests of the public and the insured in obtaining prompt and just settlement of claims." *Peter* v. *Travelers Ins. Co., supra,* at pages 1350-51. See, also, *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Co.* (1978), 76 Cal. App. 3d 1031, 143 Cal. Rptr. 415.

In line with this authority and these policy considerations, we hold that an excess insurer is subrogated to the insured's rights against a primary insurer and may maintain an action for breach of the primary carrier's good faith duty to settle and defend.[2] To prevail in such a suit the excess insurer must, however, demonstrate the primary insurer's failure to exercise good faith in line with our case law dealing with this subject. We have established in this context that:

"A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Slater* v. *Motorists Mut. Ins. Co.,* supra (174 Ohio St. 148), paragraph two of the syllabus. Accord *Wasserman* v. *Buckeye Union Cas. Co.* (1972), 32 Ohio St. 2d 69; *Spitler* v. *State Auto Mut.* (1980), 61 Ohio St. 2d 242.

Centennial in the instant cause alleges Liberty's bad faith in two respects. First, it is claimed that Liberty was guilty of bad faith because of a wrongful refusal to negotiate. Secondly, it is alleged that Liberty acted improperly in requesting Centennial to contribute to a settlement, which was within Liberty's primary policy limits of $300,000.

The facts do not support appellant's first contention concerning bad faith. Liberty conducted a thorough investigation of the original claim, provided Centennial access to its files and regularly communicated with Centennial concerning the status of the proceedings. At a pre-trial conference prior to trial in the *McAllister* case intensive negotiations took place. Settlement demands dropped from $400,000 to $339,000 to $275,000, while Liberty's offers rose from $100,000 to $175,000 to $250,000. This last offer of $250,000 was the total

---

[2] This court in paragraph two of the syllabus in *Aetna Cas. & Surety Co.* v. *Buckeye Union Co.* (1952), 157 Ohio St. 385, recognized the right of an excess insurer to recover from a primary carrier when provisions contained in the policy permitted subrogation. It was stated that "[w]here a liability insurance policy which provides secondary insurance contains provisions subrogating the insurer to the rights of the insured, such subrogation provisions inure to the benefit of that insurer as against another insurance company which carries primary insurance in favor of the same insured." There were no such contractual provisions in the instant cause.

amount that Liberty's home office, acting on the recommendation of its claims manager, had at that time authorized to settle the suit.[3] The trial judge in the *McAllister* case testified in this cause that he believed an offer of $200,000 to be "fair and substantial." There is no evidence that Liberty's negotiations were made in bad faith as that term is defined by *Slater* v. *Motorists Mutual, supra.*[4]

Centennial's second claim arises from activity taking place during this negotiation process. Liberty twice contacted Centennial during the deadlock in negotiations, inquiring into whether Centennial would contribute the $25,000 amount that the parties remained apart. Both times Centennial refused to contribute toward the settlement demand of $275,000, arguing that Liberty should first exhaust its policy limits before requesting contribution. Centennial claims that these requests constituted bad faith.

An attempt to induce an insured to contribute to a settlement has been held in some instances to evidence bad faith. See Annotation, Duty of Liability Insurer to Settle or Compromise, 40 A.L.R. 2d 168, at page 205. Such a request for contribution, however, does not require an automatic finding of bad faith, especially when the request is made with full disclosure to the excess insurer. One federal court has noted this stating:

"[T]here is nothing *per se* improper in the bare mention by the insurer that contribution is possible. Any impropriety would seem to arise from *insistence* upon a contribution as the price of settlement, particularly where the amount demanded is relatively high compared with what the insurer is willing to

---

[3] The Court of Appeals' opinion in this cause extensively detailed Liberty's difficulty in predicting, prior to trial, the huge jury award that occurred in the *McAllister* case. Much of this difficulty was caused by Liberty's inability to foresee the trial court's granting of Centennial's motion *in limine,* which removed the issue of contributory negligence from the case. Later after this motion was granted, prior to submission of the case to the jury, Liberty offered to settle for its policy limit, but the offer at that point was refused.

[4] An interrogatory submitted to the jury in the instant cause asked the jurors to indicate what acts constituted bad faith on Liberty's part. The answer stated:

"Since money was available and Liberty Mutual had liability and no defense, [the] case should have been settled before pre-trial." Under *Slater,* this finding was clearly legally insufficient to support a finding of bad faith.

contribute." *Brockstein* v. *Nationwide Mut. Ins.* (C.A. 2, 1969), 417 F. 2d 703, at page 709, affirmed after remand, 448 F. 2d 987, certiorari denied, 405 U.S. 921 (1972). See, also, 7C Appleman, Insurance Law and Practice 367, Section 4711.

Liberty's request for assistance from Centennial in making a settlement in this cause could not be characterized as an insistence upon contribution. Nor can its request be seen to evidence a conscious wrongdoing, a dishonest purpose or an actual intent to mislead, as required by *Slater* v. *Motorists Mut., supra.*

The Court of Appeals was correct in its determination that construing the evidence most strongly in favor of Centennial there was no evidence of bad faith as required by *Slater, supra.* Accordingly, the judgment of the Court of Appeals is affirmed.[5]

*Judgment affirmed.*

HERBERT, W. BROWN, SWEENEY and HOLMES, JJ., concur.

CELEBREZZE, C. J., dissents.

LOCHER, J., not participating.

---

[5] Centennial has raised several questions concerning the trial in the instant cause which were not preserved in the Court of Appeals. It is fundamental that this court will not consider issues that have not been raised in and passed upon by the court below. *Luli* v. *Sun Products Corp.* (1979), 60 Ohio St. 2d 144, 149-150.