**John Harold WOLFE, et al.,**
**Plaintiffs-Appellees,**

v.

**CONTINENTAL CASUALTY**
**COMPANY,**
**Defendant-Appellant.**

No. 78–3385.

United States Court of Appeals,
Sixth Circuit.

Argued July 14, 1980.

Decided May 6, 1981.

Jack R. Alton, Lane, Alton & Horst, Columbus, Ohio, for defendant-appellant.

·Charles E. Brant, Glander, Brant, Ledman & Newman, Columbus, Ohio, for plaintiffs-appellees.

Before EDWARDS, Chief Judge, and CELEBREZZE and PECK, Senior Circuit Judges.

CELEBREZZE, Senior Circuit Judge.

The issue in this diversity case is whether Ohio law permits an action to be maintained in contract by an insured against his insurer to recover an amount in excess of policy limits when such an action has traditionally been regarded as sounding in tort.

The lawsuit was originally filed in 1973 by John Harold Wolfe and his wife, Dorothy Wolfe, alleging a breach of duties owed them by Continental Casualty Company under an automobile liability policy in connection with an automobile accident that occurred in 1956. The Wolfe's sixteen year old son, John Wolfe, was operating an auto-

mobile when he lost control of his car, resulting in very serious injuries to his passenger, Carol Sue Cyrus. Suit was filed by her parents, the Cyruses, against Dorothy Wolfe and her son, seeking to recover for the injuries sustained by Carol Sue. At the time of the accident, John Harold Wolfe was a partner in an automobile dealership which had in force a garage liability policy issued by Continental Casualty Company to the Ironton—Russell Motor Company. The policy had a $100,000.00 limit and provided in part that the company would "defend any suit against the insured ... even if groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

Prior to trial the Cyruses made two offers to settle the case, both to the insurance company. The first offer was for $25,000.00, and the second was for $40,000.00. Agents for Continental Casualty rejected both offers, without advising the Wolfes that any offers had been made. This was done in spite of the fact that the Wolfes had urged a settlement and had offered to participate in the settlement out of their own funds. Continental had also refused to accept a working arrangement with the Wolfe's personal attorney so that the Wolfes would be fully apprised of the progress of the lawsuit prior to trial.

On February 14, 1958, the trial of the Cyrus' action commenced, and after the Cyrus' motion for a directed verdict was denied, they offered to settle the lawsuit, this time for $100,000.00. Continental rejected that offer, again without advising the Wolfes. The case was subsequently submitted to the jury, which returned a verdict of $200,000.00. While the appeal was pending Continental negotiated a settlement for $156,000.00, with Continental paying $100,000.00 and the Wolfes the remaining $56,000.00.

In 1972, John Wolfe, now grown and himself an attorney, had a happenstance conversation with the attorney who had represented the Cyruses in 1958. For the first time, the Wolfes learned of the offers of settlement that had been made and rejected, and how Continental had disclaimed coverage when speaking to the Cyruses. In 1973 an action was commenced by the Wolfes seeking the amount of the judgment which they had paid, $56,000.00, plus interest. The complaint sounded primarily in tort, asserting that Continental had acted in bad faith in defending and refusing to settle the action brought by the Cyruses in 1958. Continental removed the suit to federal court on diversity grounds and filed a motion for summary judgment, based on the statute of limitations. Considering the complaint to allege only a tort claim for wrongful refusal to settle a valid claim, the District Court agreed that the Ohio four year statute of limitations governing tort actions was a valid defense, and dismissed the case. On appeal, this court, in a split decision, affirmed the dismissal of the bad faith count, but remanded the case for consideration of a portion of the complaint which alleged a violation of a contractual duty. *Wolfe v. Continental Casualty Co.*, 529 F.2d 98 (6th Cir. 1976). The tort claim was dismissed by the District Court because O.R.C. Sec. 2305.09 provides for a four-year statute of limitations concerning tort actions. We affirmed the dismissal of the tort claim based on the statute of limitations, rejecting the argument that the statute should have been tolled. We noted, however, that certain paragraphs of the complaint alleged a breach of contractual duty on the part of Continental to advise its policyholder of the possibility of settlement. These allegations could not be ruled on because neither the District Court nor this court had the insurance policy as evidence to consider. The policy between Continental and Ironton—Russell Motor Co. which was operative in 1956 had been lost and the parties responsible for its maintenance at the insurance company were deceased. We thought it appropriate to allow plaintiffs an opportunity to present proofs on their contract claim in light of the fact that the District Court had disposed of the case on

summary judgment.[1] If plaintiffs were able to establish a breach of the insurance contract, after first entering a policy into evidence, they could then avail themselves of O.R.C. Sec. 2305.06 which establishes a fifteen year statute of limitations for written contracts. *Wolfe, supra,* 529 F.2d at 100.

On remand, a model insurance contract was provided by stipulation of the parties. The District Court found that the policy did not contain a specific provision requiring the insurance company to settle or to notify the insured regarding settlement negotiations. In the absence of such a provision, the court noted that judgment for Continental would be appropriate. Nevertheless, the court concluded that the scope of the remand was not so precisely defined. Although the court acknowledged that viewing the remand as solely for the purpose of determining whether the insurance policy expressly provided for notification to the insured regarding settlement was a "possible interpretation" of our opinion, the District Judge concluded that such an interpretation would not satisfactorily explain the remand, and that, in any event, two appeals would be better than one.[2] The court proceeded to recognize a duty of good faith dealing implied from the contract, allowing the case to be classified as one for breach of contract, rather than tort. Based on Continental's conduct in defending the lawsuit, the District Court found that Continental had "breached its duty to the insured to fairly enter into such negotiations by disclaiming liability based on lack of coverage, failing to convey offers of settlement to the insured . . . and keeping the insured in the dark by effectively keeping the insured from participating through separate counsel of the insured's choice." The court also found a "breach of contractual duty on the part of Continental to advise its policyholder of the possibility of settlement." Relying on our opinion in *Wolfe I* that the fifteen year statute of limitations pertaining to written contracts would apply to plaintiffs' contract claims, if any, the Court held that the lawsuit had been timely brought. Judgment was subsequently entered for plaintiffs in the amount of $119,-840.00 and costs. Continental then filed this appeal.

■ Ohio law is well settled that an insurer owes a duty to exercise good faith in defending and settling claims against the insured and a breach of that duty will give rise to a cause of action by the insured. *Centennial Ins. Co. v. Liberty Mutual Ins. Co.,* 62 Ohio St.2d 221, 404 N.E.2d 759 (1980); *Slater v. Motorists Mutual Ins. Co.,* 174 Ohio St. 148, 187 N.E.2d 45 (1962); *Hart v. Republic Mut. Ins. Co.,* 152 Ohio St. 185, 87 N.E.2d 347 (1949). Historically, Ohio law has regarded the claim of bad faith or wrongful refusal to settle as an intentional tort of an active and affirmative nature. *Wasserman v. Buckeye Union Casualty Co.,* 32 Ohio St.2d 69, 290 N.E.2d 837 (1972); *Slater, supra.* Most recently the Ohio Supreme Court in *Spitler v. State Auto Mutual, Inc.,* 61 Ohio St.2d 242, 400 N.E.2d 889 (1980), held that in an action by an insured to recover an amount in excess of policy limits, the insured must allege and prove bad faith as defined by *Wasserman* and *Slater* unless the insurance policy provides for a stricter standard. In *Spitler* the trial court held that an action for damages resulting from a judgment in excess of policy limits could not be maintained in contract but could be maintained only in tort, and on that claim bad faith had not been proven. The court of appeals affirmed, ruling that even if an action in contract could be maintained, the bad faith standard of

---

1. My dissenting opinion in the initial appeal of this case was based upon the failure of the plaintiffs, in my view, to proffer a case sufficient to withstand a motion for summary judgment, i. e. the existence of an insurance contract providing that the company was obligated to notify the insured regarding the possibility of settlement.

2. The District Court was unable to reconcile the remand directions with *Battista v. Lebanon Trotting Ass'n,* 538 F.2d 111 (6th Cir. 1976). The discussion of *Battista, infra,* makes clear that that decision would not bar a contract action for breach of an *express* duty of good faith dealing.

*Wasserman* would nevertheless apply. The Ohio Supreme Court declined to address the issue directly, holding only that once an insurer commences a defense, the applicable standard is bad faith. To date then, the Ohio Courts have recognized only actions in tort when an insured seeks to recover, as here, an amount in excess of policy limits.

The primary benefit to the plaintiffs of bringing this action as one in contract is the fifteen year statute of limitations which applies to claims based on a written contract; actions in tort are limited to a four year period. Obviously, plaintiffs' only chance of prevailing here is in contract, since we earlier affirmed the dismissal of the tort action because it was not brought within the four year limit. It is true that a few jurisdictions permit actions to recover an amount in excess of policy limits to be maintained in contract as well as in tort. Most notably, California permits the plaintiff to proceed on a contract theory to avoid the shorter statute of limitations applicable to tort actions. *Communale v. Traders & Gen. Ins. Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958); *Commercial Union Assurance Comps. v. Safeway Stores, Inc.,* 26 Cal.3d 912, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980); *see also Gray v. Nationwide Mutual Ins. Co.,* 422 Pa. 500, 223 A.2d 8 (1966). The basis of the contract claim is the implied duty of good faith and fair dealing which the California Supreme Court has found to be inherent in every insurance contract.[3] Plaintiffs argue that, in applying Ohio law, we should adopt the *Communale* approach despite Ohio's classification of such actions as torts.

In *Spitler, supra,* the Ohio Supreme Court chose not to decide whether an action such as this could be prosecuted under a contract theory, holding only that when an insurer undertakes the defense of an action against the insured, the insurer must act in good faith. In other words, to recover an amount in excess of policy limits, the insured must allege and prove bad faith *unless* the contract provides otherwise. This failure to imply a duty of good faith dealing from the contract suggests that the Ohio courts would view actions to recover an amount in excess of policy limits as arising exclusively in tort, unless the insurance contract expressly delineates a standard of conduct by which the lawyering of the insurance company can be measured. This construction of *Spitler* squares with the strict reading which the Ohio courts are prone to adopt when interpreting insurance contracts. *See Orris v. Claudio,* 63 Ohio St.2d 140, 406 N.E.2d 1381 (1980).

■ This approach also is consistent with that taken by the courts of Ohio in other matters. Generally, the courts will not look to an action's form as a matter of remedial procedure. Rather, the focus is on the nature or subject matter of the case. For instance, all actions the real purpose of which is to recover damages for personal injury are governed by a two year limitation and it makes no difference whether such action is for a breach of contract or strictly in tort. The limitation is imposed on the cause of action and the form in which the action is brought is immaterial. *Andrianos v. Traction Co.,* 155 Ohio St. 47, 97 N.E.2d 549 (1951); *Globe American Cas. Co. v. Goodman,* 41 Ohio App.2d 231, 325 N.E.2d 257 (1974). The purpose of the instant action is to recover damages for injury to the plaintiffs' rights; the cause of action is basically one of bad faith. Thus, even if we were to recognize an action in contract, its elements would be identical to the tort action and the four year statute of

3. The rationale for the "*Communale* duty" was articulated by the court as follows: "It is common knowledge that a large percentage of the claims covered by insurance are settled without litigation and that this is one of the usual methods by which the insured receives protection. The insurer, in deciding whether a claim should be compromised, must take into account the interest of the insured and give it at least as much consideration as it does to its own interest. When there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim. Its unwarranted refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing." (Citations omitted).

limitations might apply in light of Ohio's unwillingness to apply different statutes of limitations to identical claims.

 *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111 (6th Cir. 1976), also provides support for this result. In *Battista*, we held that under Ohio law the claim of malicious refusal to perform a contractual obligation is founded on a legal duty, not a contractual duty. As such, the action could be maintained in tort but not in contract. We recognized that a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed. The tort liability of parties to a contract arises from the breach of some positive legal duty of good faith imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contractual obligation. In the insurance context, Ohio imposes the legal duty of good faith dealing regardless of the terms of the insurance contract. This legal duty to act in good faith precludes implying a duty to support a contract action.

 *Battista* also relied on the Ohio authority that a breach of contract does not create a tort claim. The still valid rule of *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922), forbids parties to convert contract actions into tort actions by attacking the motives of a breaching party, as the motive of a breaching party is irrelevant to a contract action. To apply the bad faith standard to a duty implied from the contract would controvert this policy by making the motive of the breaching party the dispositive factor. Moreover, the availability of a tort claim makes it fair to assume that a contract action should not be available; under Ohio law the existence of a contract action generally excludes the opportunity to present the same case as a tort claim.

The Ohio courts regard this action as a tort case in which bad faith must be proven. In light of the above analysis, we see no reason to conclude that Ohio would permit recharacterization of this action as one based on contract. The decision of the District Court is reversed.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge, dissenting.

With all respect to my colleagues, I would affirm the District Judge in this appeal. Of course, we apply Ohio law in any diversity case; but where, as here, the facts are *sui generis*, we should apply that law as we believe the Ohio Supreme Court would apply it if it had this particular case to decide.

To me, reversal of the District Court's judgment serves to reward this insurance company for fraudulent concealment of material facts from its insured, thereby securing the insured's contribution of $56,000 to the over the limits settlement. Additionally, the insurance company continued fraudulently to conceal the material facts upon which the present judgment is based until after the Ohio statute of limitations as to tort claims had run.

I believe that if the Ohio Supreme Court had this classic example of an insurance company's betrayal of its insured's interests before it, the court would affirm the reasoning and decision of the trial judge.