[Cite as *Harris v. Transamerica Advisors Life Ins. Co.*, 2017-Ohio-341.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Craig Harris, et al.                                   Court of Appeals No. L-15-1252

     Appellants                                   Trial Court No. CI0201401624

v.

Transamerica Advisors Life Insurance
Company                                               **DECISION AND JUDGMENT**

     Appellee                                      Decided:  January 27, 2017

* * * * *

R. Ethan Davis and Zachary J. Murry, for appellants.

James F. Koehler and Timothy J. Fitzgerald, for appellant.

* * * *

**JENSEN, P.J.**

## I.  Introduction

{¶ 1} The plaintiffs-appellants are siblings, Craig Harris and Melanie Harris.

They are beneficiaries of a life insurance policy purchased by their mother, Joanne Harris

(hereinafter "decedent"). Appellants allege that the defendant-appellee, Transamerica Advisors Life Insurance Company, improperly calculated the death benefit following their mother's death. They also claim that appellee acted in bad faith.

{¶ 2} Appellee moved for summary judgment, and appellants moved for partial summary judgment. On August 24, 2015, the Lucas County Court of Common Pleas granted appellee's motion and denied appellants'. Appellants appealed.

{¶ 3} For the reasons that follow, we find that appellee is entitled to judgment as a matter of law, and we affirm the trial court's judgment.

## II. Statement of Facts and Procedural History

{¶ 4} The material facts are not in dispute. In 1987, the decedent purchased a life insurance policy from Monarch Life Insurance Company, a predecessor company to appellee. The single premium for the policy was $200,000. Decedent named her three children as beneficiaries, one of whom predeceased her, leaving Craig and Melanie as beneficiaries.

{¶ 5} Decedent died on March 24, 2012. According to appellee, it calculated the death benefit pursuant to the following provision:

> We will pay the death benefit proceeds to the beneficiary upon your death. * * * Death benefit proceeds are determined as follows:
>
> (1) We determine this policy's death benefit, which is the larger of the face amount and the Variable Insurance Amount. * * *
>
> The values above will be those as of the date of your death.

2.

**{¶ 6}** The "face amount" of the policy at the time of decedent's death was $449,848. Thus, the death benefit proceed was the "larger" of the $449,848 face amount and the "variable insurance amount."

**{¶ 7}** The variable insurance amount is defined and calculated as follows:

The Variable Insurance Amount on the policy date equals the cash value as of such date multiplied by the net single premium factor for your issue age. Thereafter, the Variable Insurance Amount will vary on each policy processing date based on the investment results and any additional payments made. The Variable Insurance Amount will be determined as of each policy processing date and will remain constant for the following policy processing period. It will be determined as follows:

1. We determine the cash value of the policy as of such date; and

2. We multiply (1) by the net single premium factor for your attained age as of such date. * * *

The table of net single premium factors is shown in Policy Schedule.

**{¶ 8}** The policy processing date ("PPD") occurs "on the same day of the month as the policy date at the end of the successive 3 month period." In other words, appellee recalculates death benefits four times per year, once per quarter.

**{¶ 9}** Decedent's policy date was April 3, 1987, and the net single premium factor in the third quarter for decedent, given her age when she died, was 1.30032.

3.

{¶ 10} Taking all of the above into account, appellee argues that the policy required it to calculate the death benefit payable under decedent's policy on the third day of each January, April, July and October that fell after the April 3, 1987 policy date.

{¶ 11} As appellee explains, it calculated the variable insurance amount as of January 3, 2012, the most recent PPD prior to decedent's death. It multiplied the cash value ($518,450) by the net single premium factor (1.30032) for a variable insurance amount of $674,151, as of the January 3, 2012. That amount "remained constant" until the next PPD, on April 3, 2012.

{¶ 12} Indeed, the quarterly statement sent to decedent on January 3, 2012 indicates that the net life insurance value as of that date was $674,151. Because the variable insurance amount was larger than the face amount, the death benefit was $674,171.

{¶ 13} Appellee learned of decedent's March 24, 2012 death on April 4, 2012. It mailed the respective death benefit checks to Melanie on April 27, 2012 and to Craig on May 11, 2012. Appellee sent each appellant a death benefit of $337,075.50, plus interest from decedent's date of death: $1,366.77 for Melanie and $1,883.93 for Craig.

{¶ 14} Appellants argue that appellee failed to pay the full death benefit "as it existed--- **at the date of her death---.**" (Emphasis in original.) Appellants do not claim to know the precise value of the death benefit as of March 24, 2012. Instead, they claim that "the amount paid * * * differed by approximately $42,478 from the value of the

4.

policy on the date of [decedent's] death, March 24, 2012." Appellants explain that $42,478 is the difference between the death benefit amount indicated in the January 3, 2012 quarterly statement and the April 3, 2012 quarterly statement.

{¶ 15} Appellants rely on quarterly statements to support their case. Statements sent to decedent between 1987 and early 1997 contained the following language: "The death benefit may increase or decrease *each day* depending on the investment results."[1] (Emphasis added.) Appellants also point to references in the quarterly statements encouraging decedent to contact appellee directly "the next time you need an update on your policy's values in between quarterly statements."

{¶ 16} Appellants maintain that the quarterly statements "actually became part of the contract between the parties." They argue that the intent of the parties "was that the policy's death benefit would be valued as of the date of her death, not as of the last quarterly statement sent by [appellee]."

{¶ 17} On June 6, 2014, appellants filed an amended complaint, asserting four claims of relief: breach of contract, breach of fiduciary duty, bad faith and unjust enrichment. Appellants sought compensatory and punitive damages and attorneys' fees. Appellants filed a motion for partial summary judgment, arguing that they were entitled to judgment as a matter of law as to their first and third claims.

---

[1] In October of 1997, appellee revised that language, such that it read: "The death benefit may increase or decrease *each policy processing date* depending on the investment results." (Emphasis added.)

**{¶ 18}** Appellee filed its own motion for summary judgment claiming that it was entitled to judgment as to each count. The trial court agreed with appellee. On August 24, 2015, the trial court granted appellee's motion and denied appellants'.

**{¶ 19}** Appellants appealed. Appellants challenge the trial court's decision as to their breach of contract and bad faith claims. They do not, however, challenge the dismissal of their breach of fiduciary duty or unjust enrichment claims, or their demand for punitive damages and attorneys' fees.

### III. Appellants' Assignments of Error

1. The Trial Court erred by entering summary judgment in favor of the Defendant-Appellee, and denying Plaintiff-Appellants' Motion for Summary Judgment, where both the plain language of the insurance contract and extrinsic evidence require that Defendant-Appellee pay a death benefit equal to the value of the policy as of the date of decedent's death.

2. The Trial Court erred by entering summary judgment in favor of Defendant-Appellee, and denying Plaintiffs-Appellants' Motion for Summary Judgment, on Plaintiff-Appellants' insurance bad faith claim where said claim was supported by competent expert testimony that Defendant-Appellee's failure to properly handle Plaintiff-Appellants' claim and failure to pay the full death benefit due and owing under the decedent's insurance policy constituted bad faith.

6.

## IV.  Standard of Review

{¶ 20} Appellate review of a summary judgment is de novo.  *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  In other words, we employ the same standard as the trial court, without deference to its decision.  *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1)  that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 21} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact.  Civ.R. 56(E); *Riley v. Montgomery,* 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).  A "material" fact is one which would affect the outcome of the suit under the

7.

applicable substantive law.  *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999).

## V.  Breach of Contract Claim

{¶ 22} An insurance policy is a contract.  *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 9.  To recover upon a breach of contract claim, a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff."  *Jarupan v. Hanna,* 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 18 (10th Dist.).

{¶ 23} In order to prove a breach by the defendant, a plaintiff must show that the defendant "did not perform one or more of the terms of a contract."  (Citations omitted.) *Id.* at ¶ 18.

{¶ 24} Included with appellee's motion for summary judgment was an affidavit from its claim manager who had personal knowledge of how decedent's claim was processed and benefits calculated.   According to the claims manager, appellee calculated the death benefit according to the formula set forth in the policy.  That is, appellee determined the variable insurance amount as of the date of decedent's death, compared it to the face amount, and paid the higher of the two values.

{¶ 25} Appellants point to the opinion of their own expert witness who stated in his affidavit that the language of the policy and the quarterly statements required appellee to calculate daily the death benefit, rather than just four days per year.

{¶ 26} Appellants' argument, that the policy required daily calculation, is contradicted by clear language in the policy.  That is, the $674,151 variable insurance

8.

amount calculated as of the January 3, 2012 policy processing date was "to remain constant for the following processing period." That period included decedent's March 24, 2012 date of death.

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. (Citations omitted.) *Westfield* at ¶ 11.

{¶ 27} We find that the insurance agreement, including the formula for calculating the variable insurance amount, is clear and unambiguous. We find no support for appellants' argument that the parties intended to be bound by an alternative method, including daily calculation.

{¶ 28} Moreover, we reject appellants' argument that the opinion of their expert witness created an issue of fact as to their breach of contract claim. The interpretation of a contract is an issue of law, not of fact, to be determined by the court. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996). The parol evidence

9.

that appellants rely upon, the quarterly statements and the affidavit of their expert witness, in an attempt to establish that appellee modified the policy cannot be considered as a means to establish that the insurance policy meant anything other than what it unambiguously said. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), syllabus.

{¶ 29} As a matter of law, we find that appellee was entitled to judgment as to the breach of contract claim. Appellants' first assignment of error is not well-taken.

## VI. Bad Faith Claim

{¶ 30} In their second assignment of error, appellants argue that appellee acted in bad faith by "arbitrarily failing to pay the correct death benefit under [decedent's] policy and by failing to handle this claim in good faith." Appellants argue that the lower court erred in failing to consider the opinion of its expert witness who opined that appellee acted in bad faith by failing to pay "the full amount" of the death benefit. They suggest that the expert opinion, alone, is sufficient to create an issue of fact as to the bad faith claim.

{¶ 31} An insurer has the duty to act in good faith in the handling and payment of the claims of its insured. *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. An insurer fails to exercise good faith where the circumstances do not furnish reasonable justification for its refusal to pay the claim. *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus. An insurer that improperly fails to pay a valid claim may be liable in tort for bad faith. *Hoskins* at 276; *Beever v. Cincinnati Life Ins. Co.,* 10th Dist. Franklin Nos.

10.

02 AP-543, 02 AP-544, 2003-Ohio-2942, ¶ 20. Even where a claim is ultimately paid, the insurer's "foot-dragging" in handling and evaluating the claim may support a bad-faith cause of action. *Drouard v. United Servs. Auto. Assn.,* 6th Dist. Lucas No. L-06-1275, 2007-Ohio-1049, ¶ 16.

{¶ 32} The evidence relied upon by appellants supports a case for improperly calculating the death benefit; it does not support a claim that appellee mishandled the claim or engaged in foot dragging. Thus, to the extent that their bad faith claim extends beyond merely paying the wrong amount, appellants' claim is conclusory and unsupported with any evidence.

{¶ 33} Therefore, because we find that appellee calculated and paid the death benefit pursuant to the unambiguous formula of the policy, appellants' bad faith claim fails as a matter of law. Appellants' second assignment of error is not well-taken.

### VII. Conclusion

{¶ 34} Because appellee calculated and paid the death benefit according to the life insurance policy's unambiguous formula, there is no genuine issue of material fact in dispute and appellee is entitled to judgment as a matter of law as to the breach of contract claim. Similarly, because we find no breach of contract and no evidence that appellee mishandled the claim, appellants' bad faith claim also fails as a matter of law. Appellants' assignments of error are not well-taken. We affirm the judgment of the Lucas County Court of Common Pleas granting summary judgment to appellee and denying partial summary judgment to appellants.

11.

**{¶ 35}** Pursuant to App.R. 24, costs are assessed to appellants.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.             _____
                                                      JUDGE

Stephen A. Yarbrough, J.

                                         _____
James D. Jensen, P.J.                                    JUDGE
CONCUR.

                                         _____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.