[Cite as *NL Corp., Inc. v. Seneca Specialty Ins. Co.*, 2021-Ohio-1610.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| NL CORP., INC. | : |
| | : |
| Plaintiff-Appellant | : Appellate Case No. 28927 |
| | : |
| | : Trial Court Case No. 2017-CV-1767 |
| v. | : |
| | : (Civil Appeal from |
| SENECA SPECIALTY INSURANCE | : Common Pleas Court) |
| COMPANY | : |
| | : |
| Defendant-Appellee | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of May, 2021.

. . . . . . . . . . .

DANIEL J. KNECHT, Atty. Reg. No. 0086463, 312 Walnut Street, Suite 1800, Cincinnati, OH 45202
  Attorney for Plaintiff-Appellant

MATTHEW J. BAKOTA, Atty. Reg. No. 0079830, 1 South Main Street, Suite 1300, Dayton, Ohio 45402
  Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1} NL Corp., Inc. appeals from the trial court's summary judgment in favor of Seneca Specialty Insurance Company on NL's claims for breach of an insurance policy and bad faith. After a man fell in NL's parking lot and later died, his family made a claim to Seneca, NL's insurer, and Seneca settled the claim within the limits of NL's policy. NL contended that Seneca's wrongful conduct in handling the matter required NL to retain an attorney, and that Seneca refused to reimburse NL for the attorney's fees and costs. NL also appeals from the trial court's granting summary judgment on Seneca's counterclaim for the deductible owed under the insurance policy, which NL had refused to pay. Seneca contended that, because it paid the claim, NL was obligated to pay the deductible. At least one claim remains pending in the trial court, but the trial court's granted Civ.R. 54(B) certification with respect to its judgment on the claims listed above.

{¶ 2} We conclude that the trial court did not err. Seneca's contractual duty to defend NL was never triggered because no "suit" for damages was ever filed against NL. Consequently, Seneca was not obligated to pay the fees and costs of the attorney that NL voluntarily retained. Further, Seneca did not act in bad faith in its handling of the matter. And, because Seneca paid the claim, NL is obligated to pay the required deductible. Accordingly, we affirm the trial court's judgment.

## I. Factual and Procedural Background

{¶ 3} NL operates a nightclub in the Dayton area. On May 11, 2014, a patron at the club, Adam Bishop, fell in the parking lot after a confrontation with club security and struck his head on the pavement; he died several days later. The police took witness statements and prepared a police report, and the police were given surveillance video

that had recorded Bishop's fall.

{¶ 4} Fearing criminal and civil liability, NL retained attorney Scott Jones. About a month after the incident, NL reported the incident to its insurance company, Seneca. Four days later, Seneca Senior Claims Examiner Monica Chu hired Rick Watson to investigate the incident in order to help Seneca make coverage determinations. According to Chu, Watson was told by Jones that he (Watson) could not take any witness statements or obtain the police report. Four months later, Watson was finally able to do a site inspection, but he was still prevented from taking witness statements or obtaining the police report relating to the incident. According to Jones, he wanted Watson's interviews with witnesses delayed because he was concerned that the witnesses' statements would not be privileged and because he wanted to avoid creating a record that could conflict with statements already collected by the police. NL finally gave Seneca the surveillance tape in July 2014 and the police report in December 2014.

{¶ 5} In late 2014, Thomas Schwartz, an attorney for the Bishop family, contacted both NL and Seneca about the incident. Schwartz did not assert any claims or make any requests during this initial contact. In January 2015, Schwartz again discussed the incident with Seneca, and Schwartz agreed to send Seneca documentation of the family's claims related to Bishop's death. Schwartz also had written communication with Jones (NL's attorney) in which he suggested that NL was underinsured and that NL might be responsible for payment. On February 4, 2015, at Jones's insistence, Seneca sent Jones a letter outlining its preliminary coverage position; the letter stated that the $250,000 assault-and-battery limit under the policy may apply to the claim and indicated that NL had not cooperated with Seneca's investigation of the claim.

{¶ 6} Seneca maintained that it had no obligation to pay for counsel for NL, because no suit had been filed. Nevertheless, at Jones's insistence, Seneca appointed attorney David Ross to represent NL in the investigation. But NL was not satisfied. It wanted separate counsel, unbeholden to Seneca, because NL was concerned about a potential conflict of interest between it and Seneca in the event that the Bishop family brought a claim for an intentional tort or over-the-limit coverage questions arose. The relationship between NL and Ross proved unworkable.

{¶ 7} In May 2015, Schwartz sent Seneca documents supporting the Bishop family's claim for wrongful death. Two months later, Schwartz proposed to settle the claim for $250,000 and the release of NL from all further liability. Part of the settlement required NL to provide an affidavit stating that the Seneca policy was the only one that it held that provided coverage for the incident. In August, Seneca agreed to the proposed settlement. Chu, the claims examiner, told NL's attorney, Jones, in an email that any work he did on the settlement would be at NL's expense. Nevertheless, Jones drafted NL's coverage affidavit and also helped draft language in the settlement agreement.

{¶ 8} Bishop was a resident of Missouri at the time of his death, and under Missouri law, a settlement of a wrongful-death claim had to be approved by a Missouri probate court. A probate case was opened, and on December 15, 2015, the Bishop family's settlement agreement with Seneca was approved by the court. Seneca paid the family the agreed $250,000 under the policy's coverage for assault and battery.

{¶ 9} In April 2017, NL filed suit against Seneca, claiming that Seneca had breached the insurance policy by refusing to reimburse it for Jones's fees and costs. NL alleged that it had incurred these expenses because Seneca had failed to satisfy its

obligations under the policy by not adequately and timely investigating the incident. NL further claimed that Seneca's conduct constituted insurer bad faith. Seneca counterclaimed that NL had refused to pay the $5,000 deductible that it owed under the policy after Seneca made the payment to the Bishop family.

{¶ 10} Seneca moved for summary judgment on NL's claims and on its counterclaim for payment of the deductible. The trial court sustained Seneca's motion. The court concluded that Seneca had not breached the insurance policy, determining that Seneca had no duty to defend NL because no suit seeking damages was ever filed, which was a condition precedent to the duty to defend under the policy. The court also concluded that Seneca did not breach the policy with respect to its investigation of the incident. The court found that the policy left investigation of an incident to Seneca's discretion; the policy permitted Seneca to conduct an investigation but did not require one, and certainly did not require that any investigation that Seneca chose to conduct be done to NL's satisfaction. The court also concluded that, because Seneca had no duty to defend, it could not be liable for bad faith. Lastly, the court concluded that Seneca was entitled to payment of the deductible, because there was no dispute that the policy payment triggered payment of the deductible.

{¶ 11} NL appeals.

## II. Analysis

{¶ 12} NL assigns two errors to the trial court relating to its grant of summary judgment to Seneca.

### A. NL's expert affidavit

{¶ 13} The first assignment of error alleges:

The trial court erred in failing to consider the expert testimony offered by Plaintiff-Appellant NL Corp., Inc. ("NL") when ruling on the Motion for Summary Judgment of Defendant-Appellee Seneca Specialty Insurance Company ("Seneca").

{¶ 14} In opposing Seneca's motion for summary judgment, NL presented an affidavit from an insurance-industry expert, which included his opinions on an insured's expectations when a defense is assumed, the existence of a conflict of interest between Seneca and NL, the appropriateness of supplying independent counsel, and the industry-standard practice that an insured's appointed legal counsel is expected to protect the insured's interests beginning with the investigation of the incident and through resolution or litigation of any claim. NL complains that the trial court never mentioned this affidavit in its decision.

{¶ 15} As an initial matter, just because the trial court did not refer to the affidavit did not mean that the court necessarily did not consider it. Other than its failure to mention the affidavit, there is no evidence suggesting that the trial court did not consider the affidavit. *See Berry v. Mosley*, 9th Dist. Summit No. 21411, 2003-Ohio-3790, ¶ 11 (concluding that evidence in the record did not support the appellant's contention that the trial court ignored his affidavit).

{¶ 16} Even if we were to assume that the court did not consider the affidavit, in our de novo review, we conclude that the court had good reason not to consider it: an expert cannot properly give an opinion on the law that applies in a dispute. "The interpretation of a contract is an issue of law, not of fact, to be determined by the court." *Harris v. Transamerica Advisors Life Ins. Co.*, 2017-Ohio-341, 77 N.E.3d 577,

¶ 28 (6th Dist.), citing *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996) (rejecting appellants' argument that their expert's opinion created an issue of fact as to their breach-of-contract claim). *See also Captain v. United Ohio Ins. Co.,* 4th Dist. Highland No. 09CA14, 2010-Ohio-2691, ¶ 44 (holding that the trial court properly disregarded expert affidavits opining that the insurer acted in bad faith because they failed to set forth specific facts supporting this legal conclusion); *Nicholson v. Turner/Cargile,* 107 Ohio App.3d 797, 803, 669 N.E.2d 529 (10th Dist.1995) (disregarding an expert's opinion that the contracts imposed a duty on defendants, saying that "any expert opinion interpreting them [the contract terms] has no effect").

{¶ 17} The disputes in this case were whether Seneca breached its insurance contract with NL and whether Seneca acted in bad faith. The opinion of NL's expert on either legal question was not irrelevant.

{¶ 18} The first assignment of error is overruled.

### B. Breach of contract, bad faith, and the deductible

{¶ 19} The second assignment of error alleges:

The trial court erred in granting Seneca's Motion for Summary Judgment.

{¶ 20} NL argues that the trial court erred by granting Seneca's motion for summary judgment on NL's breach-of-contract and bad-faith claims and on Seneca's counterclaim for payment of the deductible.

*Breach-of-contract claim*

{¶ 21} NL claims that Seneca breached the insurance policy by not providing NL an adequate or continuing defense, not adequately and timely investigating the incident and coverage obligations, and refusing to reimburse NL for the attorney fees and costs

that it incurred in using independent counsel to protect its interests.

{¶ 22} An insurance policy is a contract and is "construed by the same rules used to construe contracts." *World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St.3d 11, 2016-Ohio-2913, 68 N.E.3d 738, ¶ 28. To recover on a breach-of-contract claim, a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 18 (10th Dist.). And to prove a breach by the defendant, the plaintiff must show that the defendant "did not perform one or more of the terms of a contract." *Id.*

{¶ 23} We begin with the relevant provisions of the insurance contract. Paragraph 1(a) under the heading "Insuring Agreement" sets out what Seneca will and will not pay:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

* * *

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

\* \* \*

(SECTION I – COVERAGES, COVERAGE A – BODLY INJURY AND PROPERTY). The "Supplementary Payments" section referred to in the above-quoted paragraph pertinently states:

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

\* \* \*

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" \* \* \*.

\* \* \*

(SECTION I – COVERAGES, SUPPLEMENTARY PAYMENTS – COVERAGES A AND B).

{¶ 24} Applying the contract language here, Seneca agreed to pay those amounts that NL became "legally obligated to pay as damages" because of Bishop's injury. Seneca reserved "the right and duty to defend [NL] against any 'suit' seeking those damages." Seneca also retained the discretion to investigate the Bishop incident and to settle any claim or "suit" that resulted from the incident. Seneca was not obligated to pay any other amount, except the separately listed supplementary sums. One supplementary sum that Seneca had to pay was the reasonable expenses incurred by NL at Seneca's request.

{¶ 25} Next, we look at NL's relevant duties to Seneca. Under the heading "Duties In The Event of Occurrence, Offense, Claim Or Suit," the policy states:

c. You and any other involved insured must:

\* \* \*

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim

or defense against the "suit";

* * *

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Paragraph 2, SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS). In other words, NL agreed to allow Seneca to obtain the records and other information it needed and to cooperate with Seneca in its investigation. Furthermore, NL agreed that it would not assume any obligation or incur any expense without Seneca's consent, having been told that Seneca would not pay any unauthorized expense.

{¶ 26} In many places, the insurance contract distinguishes between a "suit" and a "claim." The term "suit" is defined in the contract as follows:

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(SECTION V – DEFINITIONS). "Claim" is not defined but plainly refers to a demand for

damages for bodily injury that occurs outside a formal legal proceeding. Further, we note that "occurrence" is defined simply as "an accident."

{¶ 27} With respect to the Bishop occurrence, Seneca's contractual duty to defend NL was never triggered because, quite simply, there was never a "suit"; there was only a claim made directly to Seneca by the Bishop family. The probate case in Missouri was a "civil proceeding," but it did not seek damages, being merely a proceeding to approve the settlement. Therefore, Seneca was not obligated to appoint counsel for NL.

{¶ 28} Nor did Seneca have a contractual duty to reimburse NL for the fees and costs that NL incurred by retaining Jones as its attorney before the occurrence was even reported to Seneca. Under the insurance contract, Seneca agreed to pay reasonable expenses incurred "at our request to assist us in the investigation or defense of the claim." In this case, Seneca never asked NL to hire an attorney. NL was worried about potential criminal and civil liability, so it retained an attorney to protect its interests and those of its security personnel. Doing so was likely reasonable and prudent, but it was not done at Seneca's request. Moreover, in the insurance contract, NL agreed that it would not voluntarily incur any expense "without our [Seneca's] consent." NL did not ask Seneca before hiring an attorney, and there was no evidence that Seneca ever consented. Indeed, the evidence showed that, at one point, Seneca indicated to NL that it would not pay for the attorney's work. NL retained the attorney before ever notifying Seneca of the incident and did so "at that insured's own cost."

{¶ 29} In sum, the insurance contract here did not require Seneca to provide NL a defense until there was a lawsuit for damages. While NL's hiring of an attorney to investigate and prepare for potential litigation might have been a good idea, it was not

something for which Seneca was obligated to pay. It was a "suit" that triggered Seneca's obligation to assign counsel for a defense. There was no "suit" here. Seneca had no contractual duty to defend NL and no contractual obligation to reimburse NL for the attorney that NL voluntarily retained. Moreover, the insurance contract left investigation of the incident totally within Seneca's discretion.

*Bad-faith claim*

{¶ 30} NL also alleges that Seneca acted in bad faith in its handling of the claim.

{¶ 31} " 'It is settled law in this state that an insurer owes a duty to exercise good faith in defending and settling claims against the insured and that a breach of that duty will give rise to a cause of action by the insured.' " *Cincinnati Ins. Co. v. Anders*, 2d Dist. Greene No. 2001-CA-42, 2001 WL 1564560, *3 (Dec. 7, 2001), citing *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 62 Ohio St.2d 221, 222, 404 N.E.2d 759 (1980). But "where a duty to defend has not been established, it cannot be held that the insurer was negligent, breached a contract or acted in bad faith when it refuses to defend or provide coverage." *Id.* Here, we have concluded that Seneca had no duty to defend, so it could not have acted in bad faith. *See id.* (holding that because the trial court determined that there was no duty to defend, it implicitly found that the insurer did not act in bad faith).

{¶ 32} NL argues that, even if an insurer does not have a duty to defend, it can still be held liable for bad faith. The Ohio Supreme Court has held that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), syllabus. We have said that "refusal to pay" encompasses more than the outright denial of a claim.

*Mundy v. Roy*, 2d Dist. Clark No. 2005-CA-28, 2006-Ohio-993, ¶ 18. For example, an insurer's "foot-dragging in the claims-handling and evaluation process could support a bad-faith cause of action." *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516, ¶ 15 (2d Dist.), citing *Mundy.* But those cases dealt with an insured's claim against its own insurer, not the insurer's treatment of a third-party claim. The Fourth District, citing several Ohio courts that have applied *Zoppo*'s reasonable-justification standard to "duty to defend" cases, has concluded that the standard applies to any bad-faith claim. *See Captain v. United Ohio Ins. Co.*, 4th Dist. Highland No. 09CA14, 2010-Ohio-2691, ¶ 28-29. We question whether the handling of a third-party claim that is settled within policy limits should be viewed in the same light as a direct claim of the insured against its own insurance company. But assuming that a reasonable-justification standard applies, we see nothing unreasonable about Seneca's not providing a defense or not investigating the occurrence where the unambiguous terms of the contract did not require it to do so. NL has presented no evidence that anything Seneca did was arguably unreasonable, given the circumstances and undisputed terms of the contract.

*The deductible*

{¶ 33} As to Seneca's counterclaim for the deductible that it said NL owed under the insurance contract, NL argues that Seneca's failure to reimburse it for attorney fees and costs constituted a material breach that relieved NL from paying the deductible.

{¶ 34} There is no dispute that an endorsement required NL to pay Seneca a $5,000 deductible. Seneca settled the Bishop family's claim for the full amount available under the policy's assault-and-battery coverage, triggering NL's obligation to pay. NL argues that, because Seneca still owes it attorney fees and costs, the deductible was not

yet owed. But we have determined that Seneca had no obligation to reimburse NL for these expenses, so the deductible is owed.

{¶ 35} Under Civ.R. 56(C), summary judgment is proper if it is shown "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Here, NL failed to produce summary judgment evidence to create a genuine issue of material fact as to whether Seneca breached the insurance contract, whether Seneca acted in bad faith, or that NL did not owe the deductible. The trial court properly concluded that Seneca was entitled to judgment as a matter of law on all three claims.

{¶ 36} The second assignment of error is overruled.

### III. Conclusion

{¶ 37} Before the incident from which a potential claim could arise was reported to Seneca, NL hired its own attorney, because it saw a possibility of criminal charges and knew that it might have exposure for damages beyond its insurance coverage. The attorney did his job and worked to protect NL's interests. But Seneca was not obligated to pay for these efforts. In the end, there were no criminal charges, and the only claim for civil liability came from the Bishop family directly. Seneca settled the claim, without a lawsuit being filed, within policy limits and within a reasonable amount of time. NL has been released from liability in the matter and is obligated to pay the contractual deductible.

{¶ 38} The trial court's judgment is affirmed. This case is remanded for further

proceedings on other unresolved claims.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Daniel J. Knecht
Matthew J. Bakota
Hon. Gregory Singer